IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| RICHARD A. ROWE, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Civil No. 06-1810-RMB-AMD |
| E.I. DUPONT DE NEMOURS AND COMPANY, | : | |
| Defendant. | : | |
| MISTY SCOTT, on behalf of herself and all others similarly situated, | : | |
| Plaintiff, | : | Civil No. 06-3080-RMB-AMD |
| v. | : | |
| E.I. DUPONT DE NEMOURS AND COMPANY, | : | |
| Defendant. | : | **OPINION** |

**APPEARANCES:**

Shari M. Blecher, Esq.
Leiberman & Blecher, P.C.
10 Jefferson Plaza, Suite 100
Princeton, NJ 08540

J. Steven Justice, Esq.
Taft Stettinius & Hollister LLP
110 North Main Street
Suite 900
Dayton, OH 45402-1786
        *Counsel for Rowe Plaintiffs*

Joseph A. Osefchen, Esq.
The Law Firm of Philip Stephen Fuoco
24 Wilkins Place
Haddonfield, NJ 08033

Leonard H. Niedermayer, Esq.
Law Offices of Warren S. Jones, Jr.
100 High Street
Mt. Holly, NJ 08060
     *Counsel for Scott Plaintiff*

Roy Alan Cohen, Esq.
Jeffrey M. Pypznski, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
Morristown, NJ 07962

Anthony F. Cavanaugh, Esq.
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
     *Counsel for Defendent E.I. duPont de Nemours & Co.*


**DONIO, MAGISTRATE JUDGE:**

     This matter comes before the Court by way of motion filed by Plaintiffs in Rowe, et al. v. E.I. duPont de Nemours & Co., Civil No. 06-1810, seeking to deem admitted certain requests for admissions, to compel answers to interrogatories, and for sanctions against Defendant, E.I. duPont de Nemours and Company (hereinafter, "DuPont"), and by way of separate motion filed by DuPont in Rowe, et al. v. E.I. duPont de Nemours & Co., Civil No. 06-1810, and Scott v. E.I. duPont de Nemours & Co., Civil No. 06-3080, seeking a protective order preventing the disclosure of three documents that DuPont contends are protected by the attorney-client privilege and/or work product doctrine.  The Court has considered the submissions of the parties and the arguments of counsel,[1] and has

_____

1.  The Court held oral argument on these motions on April 2, 2008, at which time J. Steven Justice, Esquire and Shari M. Blecher, Esquire appeared on behalf of the Rowe Plaintiffs,

conducted an <u>in</u> <u>camera</u> review of the three documents at issue in DuPont's motion for a protective order.  For the reasons that follow and for good cause shown, <u>Rowe</u> Plaintiffs' motion is granted in part and denied in part, and DuPont's motion for a protective order in both the <u>Rowe</u> and <u>Scott</u> cases is granted in part and denied in part.

By way of background, <u>Rowe</u> Plaintiffs, individually and on behalf of a putative class, filed their lawsuit on April 18, 2006 alleging that they suffered damage "arising from the intentional, knowing, reckless and negligent acts and omissions of DuPont in connection with the contamination of human drinking water supplies used by the plaintiffs and other class members." (<u>Rowe</u> Compl. ¶ 1.)  In their Second Amended Complaint, <u>Rowe</u> Plaintiffs assert that the contamination of human drinking water supplies "occurred in connection with DuPont's manufacturing, production, processing, recycling, use, release, discharge and/or disposal of perfluorinated materials . . . (hereinafter "PFCs") at and/or otherwise attributable to, DuPont's Chambers Works Plant (the "Chambers Works Plant") in Salem County, New Jersey." (<u>Rowe</u> Second Am. Compl. ¶ 1.)  The class which <u>Rowe</u> Plaintiffs seek to represent includes "all individuals who have consumed human drinking water for at least one year from a source of drinking water contaminated

---

Leonard H. Niedermayer, Esquire and Joseph A. Osefchen, Esquire appeared on behalf of the <u>Scott</u> Plaintiffs, and Anthony F. Cavanaugh, Esquire, Roy Alan Cohen, Esquire, and Jeffrey M. Pypcznski, Esquire appeared on behalf of DuPont in both actions.

with more than 0.04 ppb of any one PFC or any combination of PFCs attributable to releases from the Chambers Works Plant[.]" (<u>Id.</u>) <u>Rowe</u> Plaintiffs seek, <u>inter alia</u>, compensatory and punitive damages and equitable and injunctive relief, including "providing notice and medical monitoring relief to the Plaintiffs and the class and to abate and/or prevent the release and/or threatened release of one or more PFCs[.]" (<u>Id.</u> at 31, ¶¶ 3, 6.)[2]

Shortly after <u>Rowe</u> Plaintiffs initiated suit in this Court, <u>Scott</u> Plaintiff commenced a civil action in the Superior Court of New Jersey, Chancery Division, Salem County on June 14, 2006 on behalf of a putative class, alleging that her water supply is contaminated with perfluorooctanoic acid (hereinafter "PFOA") released by DuPont at the Chambers Works Plant. (<u>See</u> <u>Scott</u> Compl. ¶¶ 2, 5, 10.) The case was removed to this Court by DuPont on July 7, 2006. (<u>See</u> Notice of Removal.) In her Second Amended Complaint, <u>Scott</u> Plaintiff states that she seeks to represent a class that includes "[a]ll persons who currently receive residential water service from the Pennsgrove Water Supply Company and who received such service on or after January 21, 2007." (<u>Scott</u> Second Am. Compl. ¶ 35.) <u>Scott</u> Plaintiff and the class she seeks to represent contend they have had "significant exposure to PFOA as a result of the actions and inactions" of DuPont, although they "currently have not been diagnosed with any actual

---

2.  <u>Rowe</u> Plaintiffs seek class certification of their claims for equitable and injunctive relief.

identifiable bodily injury or condition relating to PFOA exposure." (Id. at ¶¶ 52, 56.)   In Scott, Plaintiff seeks relief in the form of "abatement of the nuisance; and an order directing duPont to fund a court-supervised program of medical monitoring to periodically measure each class member's blood and tap water for the toxic chemical PFOA[.]"   (Id. at ¶ 2.)

Presently before the Court is Rowe Plaintiffs' motion to compel DuPont to respond to a second set of interrogatories that was served on DuPont on or about November 12, 2007 and a request for admissions (hereinafter "RFAs") that was served on DuPont on or about November 14, 2007.   Rowe Plaintiffs seek three forms of relief in connection with this motion: first, that the Court deem admitted certain requests for admissions to which DuPont purportedly failed to adequately respond or, alternatively, that DuPont be compelled to revise its responses to the RFAs; second, that the Court order DuPont to respond to certain interrogatories; and third, that the Court impose sanctions on DuPont, including but not limited to reimbursing Rowe Plaintiffs for the costs of filing the present motion.   (See Rowe Pls.' Proposed Form of Order [Doc. No. 140-10]; Rowe Pls.' Mem. of Law in Supp. of Mot. to Have Req. for Admis. Deemed Admitted, to Compel Complete and Proper Resp. to Interrogs., and for Sanctions (hereinafter "Pl. Br.") 4.)

DuPont objects to the relief sought by Rowe Plaintiffs. DuPont asserts that Rowe Plaintiffs' motion is moot because DuPont has endeavored to address each of the concerns raised by Rowe

Plaintiffs with respect to their request for admissions and interrogatories. (E.I. duPont de Nemours & Company's Mem. of Law in Supp. of Opp. to Rowe Pls.' Mot. to Have Req. for Admis. Deemed Admitted (hereinafter, "Def. Opp. Br.") 1.)[3] Specifically, DuPont contends that it supplemented its responses to the request for admissions and interrogatories on January 22, 2008, and that counsel for Rowe Plaintiffs raised objections to DuPont's supplemental responses on February 4, 2008. (Id. at 4.) Rowe Plaintiffs filed the instant motion regarding DuPont's responses to the RFAs on February 11, 2008. The same day, DuPont's counsel sent a letter to the Court and Rowe Plaintiffs stating that DuPont would resolve a number of the issues raised by Rowe counsel by serving supplemental discovery responses "by no later than Friday, February 15, 2008." (Def. Opp. Br., Ex. D at 1.) DuPont contends that it has responded in good faith to the RFAs with either an admission or denial "and with qualification that DuPont believed to be reasonable." (Def. Opp. Br. 5.) Moreover, DuPont represents that on February 20, 2008, it served a second set of supplemental responses to the RFAs addressing each of the issues raised in Rowe Plaintiffs' February 4, 2008 letter, and that it "continues to

---

3. The Court notes that in opposition to Rowe Plaintiffs' motion, DuPont also asserts that Rowe Plaintiffs have not properly responded to DuPont's Request for Admissions. (Def. Opp. Br. 2-3.) Rowe Plaintiffs address in their reply brief the efforts they have made to respond to discovery propounded by DuPont. As DuPont has not filed a formal motion to compel discovery from Rowe Plaintiffs, the Court shall not address in the context of resolving this motion Rowe Plaintiffs' responses to DuPont's discovery requests.

investigate" the information sought in connection with Interrogatory No. 14.[4] (Id.)

As to the RFAs, Rowe Plaintiffs contend that DuPont "has failed to provide proper answers or objections[,] . . . instead choosing 'gamesmanship' over compliance with discovery obligations." (Pl. Br. 4.) Rowe Plaintiffs specifically challenged in their moving brief DuPont's responses to RFAs 25, 34, 36, 37, 45, 46, and 53-73. At oral argument, Rowe Plaintiffs represented that, after the present motion was filed, they received supplemental responses to RFAs 25, 45, 46, and 53-73 (with the exception of RFAs 54, 56, 58, 64, 66, and 72) that they now deem sufficient, and thus withdrew their motion to compel with respect to these RFAs. Rowe Plaintiffs nonetheless continue to seek sanctions against DuPont for purportedly having to bring the motion with respect to these discovery requests. (Rowe Pls.' Reply Mem. of Law in Supp. of Mot. to Have Req. for Admis. Deemed Admitted, to Compel Complete and Proper Resp. to Interrogs., and for Sanctions (hereinafter, "Pl. Reply Br.") 6-9.) In addition, DuPont's responses to RFAs 34, 36, 37, 54, 56, 58, 64, 66 and 72 remain at issue on this motion. DuPont asserts that all of its responses to the RFAs are in accordance with FED. R. CIV. P. 36, and that Rowe Plaintiffs' dissatisfaction with the accuracy of DuPont's responses to the RFAs does not equate with a failure of DuPont to comply with

---

4. By letter dated March 10, 2008, DuPont provided a supplemental response to Interrogatory No. 14. (See Letter, Mar. 10, 2008 [Doc. No. 151 in 06-1810; Doc. No. 153 in 06-3080].)

the requirements of FED. R. CIV. P. 36.   (Def. Opp. Br. 8.)

Rule 36 of the Federal Rules of Civil Procedure provides that a party may serve written requests to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  FED. R. CIV. P. 36(a)(1).  Within thirty days after being served with a request for admissions, "the party to whom the request is directed" must serve on the requesting party "a written answer or objection addressed to the matter" or the matter will be deemed admitted.  FED. R. CIV. P. 36(a)(3).   "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  FED. R. CIV. P. 36(a)(4).  Moreover, "[a] denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Id.  The party requesting an admission may move to determine the sufficiency of an answer or objection, and if the Court finds that an answer does not comply with Rule 36, it may "order either that the matter is admitted or that an amended answer be served."  FED. R. CIV. P. 36(a)(6).

At issue in RFAs 34, 36 and 37 are DuPont's responses to Rowe Plaintiffs' requests that DuPont admit it "is not currently aware of the specific identity of any other person or entity who has discharged PFOA" into the "environment," "soil," or "ground water"

8

in "Salem County, New Jersey, other than DuPont." (Def. Opp. Br.,
Ex. F at 8-9.) DuPont answered these RFAs by stating, in pertinent
part, that it "is not currently aware of the specific identity of
any person or entity who/that has discharged PFOA into the
[environment, soil or groundwater] in Salem County, New Jersey."
(Id.) DuPont asserts that it responded to these RFAs in the
foregoing manner because "[i]mbedded within the RFA sought, is a
predicate admission that DuPont is the source of PFOA into the
environment, soil, and groundwater in Salem County. DuPont denies
this proposition and explained its basis in its response." (Def.
Opp. Br. 10.) Rowe Plaintiffs object to DuPont's response because
the response "changed the request" and "now necessarily includes
DuPont[.] . . . " (Pl. Br. 5.) Rowe Plaintiffs contend that "[i]n
essence, DuPont is saying that it is not aware of anyone, including
DuPont, that has discharged PFOA into the stated environmental
media in Salem County, New Jersey." (Id.) Rowe Plaintiffs assert
that DuPont's responses, as drafted, are in conflict with prior
discovery responses because "DuPont already answered in
supplemental response to Interrogatories 5, 6, and 8 . . . that
DuPont has released, discharged, emitted, or disposed PFOA into the
soil and groundwater at its Chambers Works Plant" in Salem County,
New Jersey. (Id.) Rowe Plaintiffs also submitted supplemental
documents that purportedly "contradict DuPont's RFA responses that
it was unaware of 'any' person or entity which engaged in such
discharging." (Rowe Pls.' Mem. in Supp. of Mot. to Supplement R.

Related to Rowe Pls.' Mot. to Have Req. for Admis. Deemed Admitted, to Compel Complete and Proper Resp. to Interrogs., and for Sanctions 2.)   Counsel for DuPont stated at oral argument that DuPont admits that it discharged PFOA into the soil and groundwater at the Chambers Works Plant and that the plant is in Salem County, New Jersey.   (T. 86:12-22, Apr. 2, 2008.)   However, DuPont states that RFAs 34, 36 and 37 are too broad because they encompass all of Salem County and are not limited to the Chambers Works Plant.   (Id. at 82:13-18, 85:5-12.)

As noted above, if a party does not admit a request for admission, it "must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."   FED. R. CIV. P. 36(a)(4).   Moreover, "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."   Id. Here, DuPont neither admits nor denies RFAs 34, 36 and 37 as phrased.   Accordingly, the Court finds that the responses do not comply with FED. R. CIV. P. 36, and the Court shall direct DuPont to serve supplemental responses specifically denying or admitting the requests.[5]   Cf. Xcel Energy, Inc. v. United States, 237 F.R.D.

_____

5.   The Court notes that Rowe Plaintiffs, by way of motion to supplement the record, submitted voluminous reports that purportedly conflict with DuPont's responses to RFAs 34, 36 and 37.   In opposition to the motion to supplement the record, DuPont argued that the reports "contain no admissions regarding the sources of PFOA and are not relevant to the dispute between the parties over RFAs 34, 36 and 37."   (Def. E.I. DuPont de Nemours and Co.'s Opp. to Pls.' Mot. to Supplement the R. with Regard to the Rowe Pls.' Mot. to Deem Admitted Req. for Admis. and for

416, 421-22 (D. Minn. 2006) (in directing defendant to amend responses to RFA, court stated "as currently framed, the Response does not plainly appear to be a denial or an admission. . . . While we have no quarrel with allowing a qualification of a Response, the qualification must [be] both clear and advanced in good faith.") (citations omitted).  Consequently, the Court shall grant in part Rowe Plaintiffs' motion to compel.  The Court notes that Rowe Plaintiffs "primarily seek[] an Order from the Court that the RFAs be deemed admitted[.]"  (Pl. Br. 14 n.3.)  Alternatively, Rowe Plaintiffs move for sanctions pursuant to FED. R. CIV. P. 37(c)(2), which provides that "[i]f a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses . .

---

Sanctions 4.)  The Court shall not address the accuracy, as opposed to the sufficiency, of DuPont's responses to RFAs 34, 36, and 37.  Under FED. R. CIV. P. 36, the Court may determine the sufficiency of the responses, i.e., whether the responses comply with the requirements of Rule 36.  However, "the right to challenge the 'sufficiency' of a response" is not "the equivalent of the right to challenge the veracity of a denial."  Foretich v. Chung, 151 F.R.D. 3, 5 (D.D.C. 1993); see also IBP, Inc. v. Mercantile Bank of Topeka, 179 F.R.D. 316, 319 (D. Kan. 1998)("Discovery often produces all kinds of inconsistencies[.] . . . Under the guise of a discovery ruling, however, [the court] generally does not propose to shape the substance of the response.  At trial defendant and the other parties will have the opportunity to argue how the evidence, with all its inconsistencies, supports their respective positions.") Therefore, the Court will not, at this stage of the proceedings, make a factual determination as to the accuracy of DuPont's responses to the RFAs.

. incurred in making that proof." Fed. R. Civ. P. 37(c)(2).[6]   In light of the arguments raised by DuPont as to the basis for rephrasing its responses -- that is, that imbedded into the responses was a "predicate admission" relating to Salem County rather than the limited area of the Chambers Works Plant -- the Court finds that DuPont's responses to RFAs 34, 36 and 37 do not warrant the imposition of sanctions at this time.  Moreover, the Court notes that "the purpose of allowing motions to challenge the sufficiency of responses [to RFAs] is to clarify how an ambiguous response will be treated so that each party is aware, as the litigation progresses, whether or not a particular issue has been admitted or is still in dispute." Foretich v. Chung, 151 F.R.D. 3, 5 (D.D.C. 1993) (citing Fed. R. Civ. P. 36 advisory committee's note).  Therefore, in keeping with this basic framework, and in light of DuPont's admissions at oral argument, the Court shall require DuPont to serve amended responses to RFAs 34, 36 and 37 denying or admitting the requests in part and qualifying the remainder as appropriate.

------

6. Rowe Plaintiffs contend that "nothing in the language of the Rule suggests" that relief under Rule 37(c)(2) "can only be given after trial."  (Pl. Reply Br. 11.)  According to the 1970 advisory committee notes, however, "Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." Fed. R. Civ. P. 37 advisory committee's note.  Therefore, if Rowe Plaintiffs prove a matter denied by DuPont in response to any appropriate requests for admission to be true at trial, they may file a motion pursuant to Fed. R. Civ. P. 37(c)(2) seeking reimbursement of reasonable expenses incurred in making that proof.

Rowe Plaintiffs also challenge in their motion to compel DuPont's responses to RFAs 54, 56, 58 and 72.  RFAs 54, 56, and 58 seek an admission from DuPont "that human exposure to PFOA has been associated with adverse effects" on the liver (RFA 54), one or more lipids (RFA 56), or one or more hormones (RFA 58), "in at least one published, peer-reviewed study."  (Def. Opp. Br., Ex. F.)  In RFA 72, Rowe Plaintiffs similarly seek an admission "that human exposure to PFOA has been associated with at least one adverse human health effect in at least one published, peer-reviewed study."  (Id.)  DuPont responded to RFA 54 by objecting in part[7] and then admitting in part that "at least one peer reviewed study has found a statistical association with occupational exposure to PFOA and changes in some liver enzymes and at least one peer-reviewed study of community exposures has found no association between PFOA exposure and liver enzymes."  (Def. Opp. Br., Ex. F at 13.)  DuPont further provided an explanation and then stated that "[i]f anything further is implicated by this Request, then it is denied."  (Id.)  The responses to RFAs 56, 58, and 72 are similar.  Each contains objections, then an admission in part with a qualification, then a denial of further implications.  (See id. at

---

7.  DuPont's objection states in part that "DuPont objects to this Request for Admission in that Plaintiffs provide no definition for the terms 'exposure', 'associated with', 'adverse effects on', and 'published, peer-reviewed study'.  DuPont further objects to Plaintiffs [sic] vague referral to studies without citing the study specifically or attaching a copy of the study or studies at issue for review and evaluation by DuPont."  (Def. Opp. Br., Ex. F at 12-13.)

13-15, 19.)   Rowe Plaintiffs contend that DuPont's responses to these RFAs do not "address that portion of the RFAs that asks whether any effects associated with PFOA exposure are 'adverse.'" (Pl. Reply Br. 8.)   Rowe Plaintiffs also state that "DuPont discussed certain health effects associated with PFOA exposure in peer-reviewed, published studies, but refused to admit or deny whether such effects were 'adverse.'"   (Id. at 8-9.)   The Court notes, however, that in each of DuPont's responses, there is an admission in part and an assertion that "[i]f anything further is implied by this Request, then it is denied."  (Def. Opp. Br., Ex. F at 12-15, 19.)   In light of this language denying the remainder of the Requests, DuPont's responses to these RFAs are sufficient under FED. R. CIV. P. 36, and ultimately a determination of whether the denial is accurate can be addressed at trial.   See Tri-State Hosp. Supply Co. v. United States, 226 F.R.D. 118, 138 (D.D.C. 2005).   Consequently, Rowe Plaintiffs' motion to compel is denied with respect to RFAs 54, 56, 58 and 72.  Moreover, having concluded that DuPont's responses are sufficient, the Court finds no basis to impose sanctions on DuPont with respect to these RFAs.

In their motion to compel, Rowe Plaintiffs also take issue with DuPont's responses to RFAs 64 and 66.   RFA 64 seeks an admission "that human exposure to PFOA has been associated with an increased rate of death from prostate cancer in at least one published, peer-reviewed study." (Def. Opp. Br., Ex. F at 16.) RFA 66 seeks an admission "that human exposure to PFOA has been

14

associated with an increased rate of death from heart disease in at least one published, peer-reviewed study." (Id. at 17.) In response to both RFAs, DuPont asserts objections and then again provides an admission in part. With respect to RFA 64, DuPont admits that "one published occupational study reported a statistical association with cases of prostate cancer, but when this study was updated with more data, there was no association found between PFOA and prostate cancer." (Id. at 16.) Similarly, with respect to RFA 66, DuPont admits that "one occupational study reported an association with PFOA exposure and ischemic heart disease that was found in one time point and using one model, but was not found consistently in all time points and models. Other occupational published studies do not find any association between PFOA exposure and ischemic heart disease." (Id. at 17.) DuPont's responses to both RFAs contain an assertion that "[i]f anything further is implied by this Request, then it is denied." (Id. at 16, 17.) Rowe Plaintiffs object to these responses because "DuPont still does not address whether there is an association between PFOA exposure and an 'increased rate of death' from prostate cancer" or heart disease. (Pl. Reply. Br. 9.) The RFAs, however, do not seek an admission that there is an association between PFOA exposure and an increased rate of death from prostate cancer or heart disease; rather, the RFAs seek an admission that "at least one published, peer-reviewed study" has associated human exposure to PFOA with an increased rate of death from prostate cancer or heart disease.

Although DuPont qualified its responses to RFAs 64 and 66 by referring to additional studies on the matter, the Court finds that the responses are sufficient under FED. R. CIV. P. 36.  The Court shall therefore deny Rowe Plaintiffs' motion to compel and request for sanctions as to RFAs 64 and 66.

The Court notes that Rowe Plaintiffs' moving brief in support of the motion to compel addressed DuPont's responses to other discovery requests, including RFAs 25, 45, 46, and 53 through 73, as well as Interrogatory 14 in Rowe Plaintiffs' Second Set of Interrogatories, but the parties have now resolved their disputes regarding these discovery requests (except for RFAs 54, 56, 58, 64, 66 and 72, which are addressed supra).[8]  After Rowe Plaintiffs filed the instant motion to compel, DuPont provided supplemental discovery responses that Rowe Plaintiffs state satisfied these requests.  However, Rowe Plaintiffs take the position that DuPont should be sanctioned for requiring Rowe Plaintiffs to engage in motion practice as to these discovery requests.

With respect to those RFAs to which Rowe Plaintiffs acknowledge that DuPont has provided sufficient responses, Rowe Plaintiffs maintain that the RFAs should nonetheless be deemed admitted.  The Court finds no basis at this time to strike the

---

8.  Rowe Plaintiffs also objected to DuPont's responses to Interrogatories 7, 11, and 12 in Rowe Plaintiffs' Second Set of Interrogatories.  At oral argument on April 2, 2008, the Court granted the motion to compel with respect to Interrogatories 7, 11, and 12, and denied the motion for sanctions with respect to these interrogatories.  (T. 95:7-16, Apr. 2, 2008.)

16

supplemental responses.   Moreover, the Court finds that sanctions are not appropriate under FED. R. CIV. P. 37(a)(5).  FED. R. CIV. P. 35(a)(5)(A) states that where a party provides discovery after a motion to compel such discovery is filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion[.] . . ." FED. R. CIV. P. 35(a)(5)(A).  However, the Court "must not order this payment" if it finds that the "opposing party's nondisclosure, response, or objection was substantially justified" or if "other circumstances make an award of expenses unjust."  Id.  The Court notes that the issue of the sufficiency of DuPont's responses to the discovery requests was brought by Rowe Plaintiffs by letter dated January 14, 2008, the day before a status conference.  At the status conference on January 15, 2008, DuPont agreed to revisit all responses, and served "Supplemental Responses" on January 22, 2008. (See Pl. Br., Ex. F.)  Rowe Plaintiffs then raised the issue of DuPont's Supplemental Responses to RFAs 25, 45, 46, and 53-73 in a letter to the Court dated February 4, 2008, one day before a February 5, 2008 status conference.  (Id.)  At the February 5, 2008 conference, DuPont's counsel stated that he had not had an opportunity to review the letter.  (T. 72:3-5, Feb. 5, 2008.)  The Court permitted a motion to compel to be filed.  By letter dated February 11, 2008, DuPont's counsel advised that "[w]e will correct the obvious error in the response to Admission Request No. 25 and

will amend the responses to Admission Requests 45 and 46 and 53-73 to cover the broader question raised by counsel.  We thought that an answer limited to the facts of the case was completely appropriate but will respond in a way that should resolve any continuing issues on those requests." (Def. Opp. Br., Ex. D at 1.) Counsel for DuPont further advised the Court that such responses would be provided "by no later than Friday, February 15, 2008." (Id.)  Rowe Plaintiffs, however, filed the present motion on February 11, 2008.  Rowe Plaintiffs thereafter received responses to some of the RFAs which they deemed sufficient.  The Court finds that there is thus no basis to award costs incurred in bringing the motion with respect to RFAs 25, 45, 46, and 53-73 (except for RFAs 54, 56, 58, and 72, the request for sanctions with respect to these RFAs being denied for reasons stated supra).  The motion for sanctions as to these discovery requests is consequently denied.[9]

With respect to Interrogatory 14, under Rule 37(d)(1)(ii), the court may order sanctions for a party's failure to respond to interrogatories.  In addition, Rule 37(d)(3) provides that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

---

9.  In addition, with respect to RFA 25, counsel for DuPont represented at oral argument that its initial response to the RFA, which mistakenly referenced the Penns Grove Water Supply Company rather than the New Jersey Department of Environmental Protection, was attributable to inadvertence.  (T. 75:14-20, Apr. 2, 2008.)

substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3).  The Court finds that an award of sanctions in connection with DuPont's response to Interrogatory 14 would not be justified.  By letter dated February 11, 2008, DuPont's counsel advised that he was "investigating further the new additional information sought by Rowe counsel in relation to Interrogatory No. 14 and will report on our progress by February 15th."  (Def. Opp. Br., Ex. D at 1.)  Rowe Plaintiffs filed the present motion on February 11, 2008.  DuPont nonetheless continued its investigation and responded to Interrogatory 14 on March 5, 2008.   (Letter, Mar. 10, 2008.)   Under these circumstances, the Court finds no basis to impose sanctions with respect to Interrogatory 14.   Rowe Plaintiffs' motion is thus denied in this regard.

Also before the Court is DuPont's motion for a protective order, which relates to three e-mails that are being withheld by DuPont as attorney-client privileged.  FED. R. EVID. 501 provides that in "civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."  FED. R. EVID. 501.  In this case, the basis for jurisdiction of this Court is diversity of the parties, and state law therefore supplies the rule of decision.  Consequently, state law also governs the application of the attorney-client privilege.

19

At oral argument, the parties stipulated that New Jersey law governs attorney-client privilege issues with respect to this motion.[10]

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).  The privilege thus "accords the shield of secrecy" to "confidential communications made within the context of the strict relation of attorney and client." United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 562, 483 A.2d 821 (App. Div. 1984).  The person asserting the privilege bears the burden of proving it applies to any given communication. Horon Holding Corp. v. McKenzie, 341 N.J. Super. 117, 125, 775 A.2d 111 (App. Div. 2001) (citations omitted).

In this case, the attorney-client privilege is asserted in the context of communications between a corporate client and in-house counsel.  It is well-settled that the attorney-client privilege extends to corporations, "which must act through their agents, including officers and employees." Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D.N.J. 1990); Wolosoff, 196 N.J. Super. at 562, 483 A.2d 821 ("the 'privilege unquestionably extends to corporations which must act through agents, including their officers and

_____

10.  Counsel for Scott Plaintiff indicated during oral argument that he takes no position with respect to the protective order motion.  (T. 6:7-10, 6:25-7:2, Apr. 2, 2008.)

employees.'") (quoting Macey v. Rollins Env. Serv., 179 N.J. Super. 535, 540, 432 A.2d 960 (App. Div. 1981)).  As noted by the District Court in Leonen, "[s]ince a corporation must act through its agents, communications between an attorney and the corporation's employees, including lower level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege." Leonen, 135 F.R.D. at 98 (citing Upjohn Co., 449 U.S. at 389, 101 S. Ct. 677, 66 L. Ed. 2d 584). The privilege may also apply to communications between a corporation's employees and in-house counsel, provided that the communications are made while in-house counsel is acting in his professional capacity as a lawyer.  Wolosoff, 196 N.J. Super. at 562, 483 A.2d 821 (quoting Macey, supra, 179 N.J. Super. at 540, 432 A.2d 960; Metalsalts Corp. v. Weiss, 76 N.J. Super. 291, 297, 184 A.2d 435 (Ch. Div. 1962)).  However, "[c]ommunications which relate to business rather than legal matters do not fall within the protection of the privilege." Leonen, 135 F.R.D. at 98 (citations omitted).

Courts have acknowledged that "in the corporate community, legal advice 'is often intimately intertwined with and difficult to distinguish from business advice.'" Id. at 98-99 (quoting Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1205 (8th Cir.), cert. denied, 459 U.S. 1017, 103 S. Ct. 379, 74 L. Ed. 2d 512 (1982)).  The Eastern District of Louisiana in In re Vioxx Products Liability Litigation noted that in-house counsel often plays a dual role in

the corporate context: "It is often difficult to apply the attorney-client privilege in the corporate context to communications between in-house corporate counsel and those who personify the corporate entity because modern corporate counsel have become involved in all facets of the enterprises for which they work. As a consequence, in-house legal counsel participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues." In re Vioxx Prod. Liab. Litig., 501 F. Supp. 2d 789, 797 (E.D. La. 2007).

In deciding whether the attorney-client privilege protects a particular communication between a lawyer and a corporation, the Court must determine whether the communication is "'designed to meet problems which can fairly be characterized as predominately legal.'" Leonen, 135 F.R.D. at 99 (quoting Cuno Inc. v. Pall Corp., 121 F.R.D. 198, 204 (E.D.N.Y. 1988)).[11] "Only if the attorney is 'acting as a lawyer' giving advice with respect to the legal implications of a proposed course of conduct may the

---

11. For purposes of deciding the motion, the Court will utilize the "predominantly legal" test. Rowe Plaintiffs note that "[c]ourts throughout the country . . . have used various labels interchangeably to describe this test, including the 'primary purpose' test, the 'but for' test' [sic], and 'predominantly legal' test." (Rowe Pls.' Mem. of Law in Opp. to Def.'s Mot. for Protective Order (hereinafter, "Pl. Opp. Br.") 8 n.2.) The parties, however, do not dispute that the "predominantly legal" test is the appropriate standard by which the Court determines whether a communication is protected by the attorney-client privilege. (Def. E.I. duPont de Nemours and Company's Mem. of Law in Supp. of its Mot. for Protective Order 2, 4; Pl. Opp. Br. 8 n.2; see also Leonen, 135 F.R.D. at 99.)

privilege be properly invoked. In addition, if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege." <u>Hercules, Inc. v. Exxon Corp.</u>, 434 F. Supp. 136, 147 (D. Del. 1977).[12]

The first document at issue on this motion, identified in the moving papers as Exhibit 30, is an e-mail sent by Bernard Reilly, Corporate Counsel for DuPont, to several DuPont employees in 2003, which is withheld by DuPont as attorney-client privileged.[13] (<u>See</u> Cert. of Bernard J. Reilly in Supp. of DuPont's Assertion of Att'y-Client Privilege and Att'y Work Product Protection (hereinafter, "Reilly Cert.") ¶ 1; Def. E.I. duPont de Nemours and Company's Mem. of Law in Supp. of its Mot. for Protective Order (hereinafter "Def.

---

12. The Court notes that documents to which the attorney-client privilege attaches may nonetheless be subject to disclosure if "overriding public policy concerns" warrant production. <u>Leonen</u>, 135 F.R.D. at 100. In this regard, under New Jersey law, the privilege may be pierced if (1) "there is a legitimate need to reach the evidence sought to be shielded," (2) "there is a showing of relevance and materiality of that evidence to the issue before the court," and (3) the party seeking disclosure of the document shows "by a fair preponderance of the evidence, including all reasonable inferences, that the information cannot be secured from any less intrusive means." <u>Id.</u> (citing <u>In re Kozlov</u>, 79 N.J. 232, 243-44, 398 A.2d 882 (1979)). However, <u>Rowe</u> Plaintiffs do not assert in their papers that "overriding public policy concerns" warrant disclosure of the three documents at issue here.

13. The Court notes that Exhibit 30 is a chain e-mail from G. Irvin Lipp forwarding Mr. Reilly's original e-mail to other individuals. At oral argument, counsel for DuPont represented that the portion of the document that contains correspondence between Mr. Lipp and other individuals has been produced, and only the portion of the document with the original e-mail from Mr. Reilly has been redacted. (T. 51:8-52:7, Apr. 2, 2008.)

23

Br.") 4.)  DuPont states that at the time the e-mail was written,
Mr. Reilly's duties as Corporate Counsel included "advising DuPont
on an ongoing regulatory dispute with the Delaware Department of
Natural Resources and Environmental Control (DNREC) and the
Delaware River Basin Commission (DRBC)[.] . . ."  (Reilly Cert. ¶
4.)   Specifically, the dispute involved the designation of a
section of the Delaware River near DuPont's facility as "impaired."
(Id. at ¶¶ 4, 8.)   DuPont contends that it challenged this
designation, and thus was anticipating regulatory action by the
DNREC.  (Id.)  Accordingly, DuPont asserts, Mr. Reilly sent an e-
mail to DuPont employees and corporate counsel to advise them of
his interpretation of "impaired" as set forth in the DNREC
regulation.  (Id. at ¶¶ 6, 8; Def. Br. 4.)  DuPont further asserts
that in the e-mail, Mr. Reilly provided "confidential legal advice"
as to how DuPont's employees should respond to questions that the
DNREC and the DRBC might pose with respect to published data on
discharges into the Delaware River.  (Reilly Cert. ¶¶ 5, 6.)  Thus,
DuPont contends, "the primary, if not sole, purpose of his
communication was to provide legal advice on a regulatory issue."
(Def. Br. 4.)  As such, DuPont asserts that this document is
protected from disclosure by the attorney-client privilege.[14]

In opposing DuPont's privilege claim as to Exhibit 30, Rowe
Plaintiffs assert that because the e-mail was prepared to address

_____

14.  DuPont withdrew a claim of work product protection with
respect to Exhibit 30.  (Def. Br. 3 n.5.)

regulatory issues, the primary purpose of the communication was to convey business rather than legal advice.  (Rowe Pls.' Mem. of Law in Opp. to Def.'s Mot. for Protective Order (hereinafter, "Pl. Opp. Br.") 13.)   Rowe Plaintiffs state that regulatory issues can be addressed by non-lawyer employees as a matter of business practice, particularly in highly-regulated industries, and consequently are not inextricably connected to legal issues.  (Id. at 12.)   Rowe Plaintiffs contend that DuPont has the burden of demonstrating that the e-mail from Mr. Reilly would not have been sent "but for" DuPont's need for legal advice, and that DuPont has failed to meet this burden.  (Id. at 13.)[15]  In a supplemental submission, Rowe Plaintiffs also reference a protective order entered in a separate action pending in West Virginia, which addresses "the dual roles Mr. Reilly served with DuPont, both as a legal advisor and as an advisor on routine business matters." (Rowe Pls.' Notice of Filing of Supplemental Authority Relevant to Mem. in Opp. to Def.'s Mot.

---

15.  Rowe Plaintiffs also note that DuPont's privilege log identifies Exhibit 30 as being an e-mail from G. Irvin Lipp, who is not a lawyer, to eight DuPont employees, and not an e-mail from Mr. Reilly.  (Pl. Opp. Br. 13.)   Rowe Plaintiffs appear to argue that because the "largest audience for the document was DuPont employees, not attorneys," the e-mail should be deemed as primarily a business communication rather than a document protected by the attorney-client privilege.  (Id.)  As previously discussed, DuPont's counsel represented at oral argument that Exhibit 30 is a chain e-mail that originated with Mr. Reilly, and was then forwarded by Mr. Lipp, a recipient of Mr. Reilly's e-mail, to others.  According to DuPont's counsel, the e-mail from Mr. Lipp was produced to Rowe Plaintiffs, with the portion of the e-mail from Mr. Reilly redacted.  Consequently, the Court need not address Rowe Plaintiffs' arguments as to whether the attorney-client privilege attaches to the e-mail from Mr. Lipp to the eight DuPont employees.

for Protective Order 2.)[16]

In the e-mail, Mr. Reilly is outlining proposed messages for response to anticipated questions by the DNREC that may arise following publication of a new article concerning discharges to the Delaware River in light of the DNREC's classification of a portion of the river as "impaired."  The Court finds, however, that DuPont has not met its burden of persuasion that the predominant purpose of the e-mail was to convey legal advice in connection with this regulatory issue.[17]  In so finding, the Court notes that "[a]lmost any act by a business . . . carries the potential for running afoul of some law or regulation or giving rise to a civil action. . . . The fact of extensive or pervasive regulation does not make the everyday business activities legally privileged from discovery." In re Seroquel Prods. Liab. Litig., No. 6:06-md-1769, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008).  In his certification, Mr. Reilly asserts that the document was prepared "solely for the

_____

16.  Specifically, the protective order states that "the evidence indicates that Bernard Reilly, in-house counsel for DuPont, played some role in the administration of routine business matters association [sic] with the remediation and that he also served as a legal advisor to DuPont with regard to the remediation."  (Id., Ex. A at 7.)

17.  "When documents concern business decisions or are the product of corporate committees responsible for business decisions in the area of 'technological, science, public relations or marketing,' it is the party claiming the privilege who has the burden of showing the communications at issue are more than simply grammatical, editorial, technological, scientific, public relations, or marketing suggestions, and are specifically in the nature of legal advice."  In re Seroquel Prods. Liab. Litig., No. 6:06-md-1769, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008) (citation omitted).

purpose of providing legal advice on the interpretation of DNREC regulations and advising DuPont on regulatory strategy within [his] professional capacity as corporate counsel for DuPont." (Reilly Cert. ¶ 8.) However, DuPont has not demonstrated that legal advice was the predominant purpose for this e-mail or that the "regulatory strategy," in the context of this e-mail, is protected under the attorney-client privilege. See MSF Holding, Ltd. v. Fiduciary Trust Co. Int'l, No. 03 Civ. 1818, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005) ("[T]o determine whether counsel's advice is privileged, 'we look to whether the attorney's performance depends principally on [her] knowledge of or application of legal requirements or principles, rather than [her] expertise in matters of commercial practice.' . . . [T]he e-mails at issue here reflect the exercise of a predominantly commercial function. . . . [T]he author of the communications . . . never alluded to a legal principle in the documents nor engaged in legal analysis. . . . [S]he evidently relied on her knowledge of commercial practice rather than her expertise in the law. The documents are therefore not privileged."). The Court concludes that Exhibit 30 does not reflect the exercise of a predominantly legal function as opposed to business advice in a regulatory industry, and thus is not protected from disclosure by the attorney-client privilege. Accordingly, DuPont's motion for a protective order is denied with respect to Exhibit 30.

The other two documents at issue in DuPont's motion for a

protective order, identified in the moving papers as Exhibits 42 and 43, are two e-mails dated June 17, 2004 drafted by attorneys purportedly responding to a request for legal advice from DuPont employees. (Def. Br. 5.) Exhibit 43 was drafted by John Bowman, who DuPont represents served as in-house counsel for DuPont and acted as lead in-house litigation counsel for DuPont in litigation captioned <u>Jack W. Leach, et al. v. E.I. duPont de Nemours and Company</u>, Circuit Court of Wood County, West Virginia, Civil Action No. 01-C-608 (hereinafter, "<u>Leach</u> case"), from August 2001 to March 2004. (Cert. of Silvio J. DeCarli in Supp. of DuPont's Assertion of Att'y-Client Privilege and Att'y Work Product Protection (hereinafter, "DeCarli Cert.") ¶¶ 5, 6.) DuPont further alleges that in March 2004, Mr. Bowman was retained by DuPont as a legal consultant for the <u>Leach</u> case, and purportedly "regularly provided litigation-related legal advice to DuPont." (<u>Id.</u> at ¶¶ 7, 8.) Exhibit 42 was drafted by Silvio DeCarli, who succeeded Mr. Bowman as lead in-house litigation counsel for DuPont in the <u>Leach</u> case in March 2004 and also purportedly "regularly provided litigation-related legal advice to DuPont." (<u>Id.</u> at ¶¶ 6, 8.) DuPont contends that in April 2004, two months before the e-mails at Exhibits 42 and 43 were sent, the Environmental Working Group had provided a letter to the Environmental Protection Agency (hereinafter, "EPA") requesting an investigation because DuPont allegedly failed to submit documentation as required by the Toxic Substances Control Act (hereinafter, "TSCA"). (<u>Id.</u> at ¶ 12.)

28

According to DuPont, in anticipation that the EPA would pursue litigation under TSCA, certain DuPont employees requested legal advice from Messrs. Bowman and DeCarli as to the position that DuPont should take with respect to the "fundamental issues in a TSCA action" and the "potential ramifications" that a statement by DuPont in connection with the TSCA action could have on the pending Leach case.[18]   (Id. at ¶¶ 17, 19.)  Mr. Bowman responded by e-mail and then Mr. DeSilvo responded with his "legal advice on the same issues." (Id. at ¶¶ 18, 19.)  DuPont asserts that the employees who were recipients of the e-mails were "from a cross-section of specific business units and corporate functions, and each had job responsibilities that required that they remain advised of [DuPont's] legal position regarding pending and threatened litigation with respect to PFOA and core issues related to those potential legal liabilities." (Def. Br. 5.)  Ultimately, on July 8, 2004, less than one month after the two e-mails at Exhibits 42 and 43 were sent, the EPA filed a Complaint and Notice of Opportunity for Hearing, alleging that DuPont failed to submit information as required under TSCA. (DeCarli Cert. ¶ 13.) DuPont argues that the e-mails are protected by the attorney-client privilege because they constitute "confidential legal advice to a group of DuPont employees in response to a request for such

_____

18.  According to DuPont, one of the issues with respect to the TSCA statute was whether DuPont's regulatory reporting obligation under TSCA was triggered, which inquiry turned on whether PFOA presented a threat to human health of a nature that would trigger such a reporting obligation.  (Def. Br. 6.)

advice." (Def. Br. 5.)

In opposition to DuPont's motion, Rowe Plaintiffs argue that the attorney-client privilege does not attach to the e-mails at Exhibits 42 and 43 because they do not satisfy the "primarily legal" test, in that they were transmitted to a number of DuPont employees who are not lawyers. (Pl. Opp. Br. 11.) Rowe Plaintiffs take the position that DuPont "cannot claim that the primary purpose of the communication was for legal advice or assistance" because, by dissemination of the e-mails to an audience of both in-house counsel and DuPont employees, "the communication served both business and legal purposes." (See id. at 9-10.) In this regard, Rowe Plaintiffs contend that "[a] document prepared for simultaneous review by legal and non-legal personnel where legal and business advice is requested, is not primarily legal and therefore is not privileged." (Id. at 9.) In support of this argument, Rowe Plaintiffs argue that when a corporation "'simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'" (Id. at 10) (quoting In re Vioxx, 501 F. Supp. 2d at 805-06).

The Court rejects Rowe Plaintiffs' argument that because the e-mails at Exhibits 42 and 43 were sent primarily to non-lawyers, they could not have predominantly served a legal purpose and therefore are not attorney-client privileged. The Court in In re

Vioxx noted that e-mails from in-house counsel could be attorney-client privileged -- even if sent to non-lawyer employees -- as long as the e-mails were sent for the purpose of circulating legal advice "to those within the corporate structure who needed the advice in order to fulfill their corporate responsibilities," or to "inform those recipients of the nature of the legal advice being sought[.]"  See In re Vioxx, 501 F. Supp. 2d at 811-12.  Thus, in deciding whether the attorney-client privilege attaches to an e-mail from in-house counsel, the court's inquiry should not focus on whether the recipients of the e-mail are lawyers; rather, the court must determine whether the primary purpose and content of the e-mail is predominantly legal.  The certification submitted by DuPont states that "Mr. Bowman and [Mr. DeCarli] provided legal advice regarding an accurate description of the TSCA action."  (DeCarli Cert. ¶ 15.)  Accordingly, the Court concludes that the fact that the e-mails were sent to non-lawyers is not determinative of whether the attorney-client privilege attaches to the e-mails at Exhibits 42 and 43.

Having reviewed the e-mails and the Certification of Mr. DeCarli, the Court finds that Exhibits 42 and 43 are protected from disclosure by the attorney-client privilege.[19]  Exhibit 42 includes

---

19.  The Court notes that DuPont also asserts that Exhibits 42 and 43 are protected from disclosure by the work product doctrine.  Rowe Plaintiffs challenge DuPont's designation of Exhibits 42 and 43 as work product.  Having found that the attorney-client privilege applies to protect these documents from disclosure, the Court need not address whether they are also protected under the work product doctrine.

a lawyer's interpretation of TSCA, and both Exhibits provide legal advice.  The Court finds that DuPont has met its burden of demonstrating that these e-mails were "'designed to meet problems which can fairly be characterized as predominately legal.'"  See Leonen, 135 F.R.D. at 99.  DuPont's motion for a protective order shall consequently be granted with respect to Exhibits 42 and 43.

An appropriate Order shall be entered.


                                        s/ Ann Marie Donio
                                        ANN MARIE DONIO
                                        UNITED STATES MAGISTRATE JUDGE

Dated: September 30, 2008


cc: Hon. Renée Marie Bumb