[06-1810, Dkt. No. 289]
[06-3080, Dkt. No. 256]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| RICHARD A. ROWE, et al.,<br>individually and on behalf of<br>themselves and all others<br>similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>E.I. DUPONT DE NEMOURS AND<br>COMPANY,<br><br>            Defendant. | Civil No. 06-1810 (RMB) |
| MISTY SCOTT, on behalf of<br>herself and all others<br>similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>E.I. DUPONT DE NEMOURS AND<br>COMPANY,<br><br>            Defendant. | Civil No. 06-3080 (RMB)<br><br><br>**OPINION** |

APPEARANCES:

Attorneys for Plaintiffs
    Andrew J. Chamberlain
    Michael George Sinkevich, Jr.
    Shari M. Blecher
    Stuart J. Lieberman
    Lieberman & Blecher, P.C.
    10 Jefferson Plaza Suite 100

1

```
      Princeton, NJ 08540
Attorneys for Defendant DuPont
      Roy Alan Cohen
      Porzio, Bromberg & Newman, PC
      100 Southgate Parkway
      P.O. Box 1997
      Morristown, NJ 07962
```

**BUMB**, United States District Judge:

## I.   INTRODUCTION

This matter comes before the Court upon two motions for class certification of common law claims – one by the Rowe Plaintiffs [Dkt. No. 289 (06-1810)] and one by the Scott Plaintiff [Dkt. No. 256 (06-3080)] (collectively, "Plaintiffs"). These motions were deemed filed upon the Court's Order, dated July 29, 2009 [Dkt. No. 320 (06-1810); Dkt. No. 275 (06-3080)]. The Court received Defendant's opposition on August 28, 2009 [Dkt. No. 329 (06-1810); Dkt. No. 284 (06-3080)] and Plaintiffs' Reply on September 8, 2009 [Dkt. No. 332 (06-1810); Dkt. No. 287 (06-3080)].  Because the parties are familiar with the factual and procedural background of these cases, the Court will proceed directly to its analysis of the pending motions.


## II.   STANDARD OF REVIEW

In order to be certified, "a class must satisfy the prerequisites of Rule 23(a) and the 'parties seeking certification must also show that the action is maintainable under Rule 23(b)(1), (2), or (3).'"  <u>Barnes v. American Tobacco</u>

Co., 161 F.3d 127, (3d Cir. 1998) (quoting <u>Amchem Prods., Inc. v.</u>
<u>Windsor</u>, 521 U.S. 591 (1997).  The party seeking class
certification bears the burden of proving that each of the
requirements under Rule 23 has been met.  <u>Baby Neal v. Casey</u>, 43
F.3d 48, 55 (3d Cir. 1994).  "A party's assurance to the court
that it intends or plans to meet the requirements is
insufficient."  <u>In re Hydrogen Peroxide Antitrust Litigation</u>, 552
F.3d 305, 318 (3d Cir. 2008).

     The court has discretion under Rule 23 to certify a class
but it must perform "a rigorous analysis" to satisfy itself that
the prerequisites of Rule 23 have been met.  <u>Beck v. Maximus,</u>
<u>Inc.</u>, 457 F.3d 291, 297 (3d Cir. 2006).  "'Because the decision
whether to certify a class requires a thorough examination of the
factual and legal allegations, the court's rigorous analysis may
include a preliminary inquiry into the merits, and the court may
consider the substantive elements of the plaintiffs' case in
order to envision the form that a trial on those issues would
take.'"  <u>Hohider v. United Parcel Service, Inc.</u>, 574 F.3d 169,
176 (3d Cir. 2009) (quoting <u>Hydrogen Peroxide</u>, 552 F.3d at 317)
(internal quotations omitted).  If certification is warranted,
the district court's certification order must include "a clear
and complete summary of those claims, issues or defenses subject
to class treatment." <u>Wachtel v. Guardian Life Ins. Co. of</u>
<u>America</u>, 453 F.3d 179, 184 (3d Cir. 2006); Fed. R. Civ. P.

23(c)(1)(B).

## III.  ANALYSIS

The Rowe Plaintiffs seek class certification of the following common law claims:  nuisance, trespass, negligence and gross negligence.  (Rowe Motion at 2).  The Scott Plaintiff seeks certification of the following common law claims:  private nuisance, public nuisance, negligence and strict liability. (Scott Motion at 2).  To be certified as classes on these claims, Plaintiffs must provide precise definitions of their proposed classes and meet the requirements of Rule 23(a) and (b).

### A.  Class Definitions

Before delving into the requirements of Rule 23 (a) and (b), the Court must determine whether Plaintiffs' proposed class definitions are "readily ascertainable based on objective criteria." Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009) (citing Crosby v. Social Sec. Admin. of U.S., 796 F.2d 576, 580 (1st Cir.1986); Simer v. Rios, 661 F.2d 655, 669 (7th Cir.1981); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 2006 WL 2161887, at *3 (S.D.N.Y. 2006), aff'd, 546 F.3d 196 (2d Cir. 2008)).  "While class definitions obviously are tailored to the specifics of every case, important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a

4

particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner." Bentley v. Honeywell Int'l Inc., 223 F.R.D. 471, (S.D. Ohio 2004) (citing Crosby, 796 F.2d at 580). Although "Plaintiffs need not prove that class members have been injured for purposes of defining the [classes], Plaintiffs' class definitions must have some relation to the Defendant['s] activities." O'Connor v. Boeing North American, Inc., 184 F.R.D. 311, 320 (C.D. Cal. 1998).

Rowe and Scott Plaintiffs each propose a class of "all individuals who, as of the time a class is certified in this case, either are residential water customers of Penns Grove Water Supply Company ("PGWS") that have an ownership interest (meaning own or lease) in their real property served by PGWS or are persons who have an ownership interest in a private well within a two-mile radius of DuPont's Chambers Works plant, which supplies drinking water containing [PFOA]... ." (Rowe Motion at 14; Scott Motion at 13). The Court finds that this definition specifies an identifiable group (residents who receive water from PGWS or certain wells), location (PGWS service area and various private wells within a two-mile radius of the Chambers Works plant) and time[1] (as of the certification of the class). Class membership

---

[1] Unlike the medical monitoring claim, for which this Court previously denied certification, Plaintiffs' common law claims do not necessitate a durational component.

can be obtained through objective evidence – namely, PGWS's customer records and public well documentation.  (Rowe Motion at 15; Scott Motion at 13).  Accordingly, this definition satisfies the standard of a practicable class definition.

**B.  Rule 23(a) Requirements**

Rule 23(a) contains four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[2] The Court will discuss each of these requirements in turn with respect to Plaintiffs' common law claims.

**1.  Numerosity**

The numerosity requirement requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  As the Court found in its prior Opinion, "the proposed Rowe class definition covers thousands of residential PGWS water customers and will include approximately 14,000 to 15,000 people in total" and "the proposed Scott class numbers over 10,000 people."  (Opinion, dated Dec. 12, 2008, at 13-14) (citing Rowe Initial Motion for Cert. at 35; Nov. 10, 2008 Hearing Tr. 19:4-9).  DuPont does not dispute the numerosity of

---

[2] The exact language of Rule 23(a) provides:  "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

either class.  (<u>Id.</u> at 14).  Although there is no minimum number required, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).  Accordingly, the Court finds that both the Rowe Plaintiffs and the Scott Plaintiff have satisfied the numerosity requirement.

### 2.  Commonality

The second requirement is commonality, which requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a).  This does not mean that all the factual and legal questions in the case must be identical for all proposed class members.  To the contrary, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  <u>Baby Neal</u>, 43 F.3d at 56.

Although there are some individualized issues in connection with Plaintiffs' common law claims, discussed <u>infra</u>, "the existence of individualized issues in a proposed class action does not per se defeat commonality."  <u>Brooks v. Educators Mut. Life Ins. Co.</u>, 206 F.R.D. 96, 101 (E.D. Pa. 2002) (citing <u>Johnston v. HBO Film Mgt., Inc.</u>, 265 F.3d 178, 191 (3d Cir. 2001).  Indeed, the commonality requirement "may be satisfied by a single common issue... ."  <u>Baby Neal</u>, 43 F.3d at 56.  In this

case, the Court finds that there are issues relevant to
Plaintiffs' common law claims that are common to all class
members, such as whether DuPont released PFOA from its Chambers
Works Plant in New Jersey into the surrounding air and water.
Thus, the commonality prerequisite is satisfied.

### 3.  Typicality

Although "'[t]he concepts of commonality and typicality are
broadly defined and tend to merge[,]'" the Court will address
typicality separately.  Barnes, 161 F.3d at 141 (quoting Baby
Neal, 43 F.3d at 56).  The typicality requirement considers
whether "the claims or defenses of the representative parties are
typical of the claims or defenses of the class."  Fed. R. Civ. P.
23(a).  This inquiry "is intended to assess whether the action
can be efficiently maintained as a class and whether the named
plaintiffs have incentives that align with those of absent class
members so as to assure that the absentees' interests will be
fairly represented."  Baby Neal, 43 F.3d at 57.  However, the
typicality requirement "does not mandate that all putative class
members share identical claims."  Barnes, 161 F.3d at 141.
Rather, it is well settled that "'[f]actual differences will not
render a claim atypical if the claim arises from the same event
or practice or course of conduct that gives rise to the claims of
the class members, and if it is based on the same legal theory.'"
Id. (quoting Newberg on Class Actions § 3.15, at 3-78).

In this case, the common law claims of both the Rowe and
Scott named plaintiffs are typical of the claims of the entire
proposed classes because they arise from the same course of
conduct committed by DuPont, involve the same legal theories
(nuisance, trespass, negligence, and strict liability), and seek
the same injunctive relief.  Thus, Plaintiffs have satisfied the
typicality requirement.

### 4.  Adequacy of Representation

The final requirement under Rule 23(a), adequacy of
representation, questions whether "the representative parties
will fairly and adequately protect the interests of the class."
Fed. R. Civ. P. 23(a).  This requirement "depends on two factors:
(a) the plaintiff's attorney must be qualified, experienced, and
generally able to conduct the proposed litigation, and (b) the
plaintiff must not have interests antagonistic to those of the
class."  Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912,
923 (3d Cir. 1992) (internal citation omitted).  Unlike the other
requirements, when it comes to adequacy, "[t]he party challenging
representation bears the burden to prove that representation is
not adequate."  In re Prudential Ins. Co. of America Sales
Practices Litigation, 962 F. Supp. 450, 519 (D.N.J. 1997).

As to counsel qualification, the Court's earlier finding
remains true now - there is "no dispute as to the qualification
of counsel for either proposed class of plaintiffs."  (Opinion,

dated Dec. 23, 2008, at 19).  Thus, the first part of the inquiry
is satisfied.

The second part of the inquiry addresses whether the named
plaintiffs have "the ability and the incentive to represent the
claims of the class vigorously" and whether there is any
"conflict between the individual[s'] claims and those asserted on
behalf of the class."  Hassine v. Jeffes, 846 F.2d 169, 179 (3d
Cir. 1988).  Both the Rowe and Scott classes have explicitly
represented that they do not seek any money damages for personal
injuries for their common law claims, but only injunctive relief
in the form of abatement and clean water.  Thus, the interests of
the named plaintiffs and the members of the proposed classes are
aligned.  Moreover, small factual differences between the named
plaintiffs and the proposed class members do not necessarily
overcome this alignment of interests.  "[D]ifferences in the
interests of the class representatives and the other class
members is not dispositive under Rule 23(a)(4).  The key question
is whether their interests are antagonistic."  Steiner v.
Equimark Corp., 96 F.R.D. 603, 610 (W.D. Pa. 1983) (citing Wetzel
v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975)).  For
instance, the fact that the named plaintiffs may drink primarily
bottled water as opposed to the unfiltered PGWS water does not
render their interests antagonistic to the proposed class
members' interests – they all seek clean water.

10

Because DuPont has not met its burden of demonstrating that the named plaintiffs are inadequate representatives of their respective classes, the Court finds the adequacy of representation requirement satisfied.

**C.  Rule 23(b) Requirements**

Plaintiffs have met the requirements of 23(a) and now the Court must now proceed to the requirements of 23(b).  Pursuant to this section, Plaintiffs must demonstrate that certification is appropriate under part (b)(1), (b)(2), or (b)(3).  Both the Rowe Plaintiffs and the Scott Plaintiff assert that certification of their common law claims is proper under (b)(2), which provides that a class action may be maintained if,

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Fed. R. Civ. P. 23(b)(2).  Thus, to merit certification under section (b)(2), Plaintiffs must show that DuPont's conduct or refusal to act is "generally applicable" to the class and that the relief they seek is primarily injunctive.  7AA Wright & Miller § 1775, at 41.  Additionally, for certification under (b)(2), "it is well established that the class claims must be cohesive." <u>Barnes</u>, 161 F.3d at 143.  In fact, "a (b)(2) class may require more cohesiveness than a (b)(3) class ... because in a (b)(2) action, unnamed members are bound by the action without

11

the opportunity to opt out." Id. at 142.

Moreover, "the district court has the discretion to deny certification in Rule 23(b)(2) cases in the presence of disparate factual circumstances." Id. at 143. (internal quotation omitted). The determination of whether a class involves individualized issues is important for two reasons: (1) "unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action[;]" and (2) "the suit could become unmanageable and little value would be gained in proceeding as a class action ... if significant individual issues were to arise consistently." Id. (finding that the case presented "too many individual issues to permit certification").

As the Court found in its prior Opinion, "DuPont's conduct is 'generally applicable' to both classes, as DuPont has allegedly released PFOA into the water sources used by (or at least intended for the use by) members of both classes." (Opinion, dated Dec. 23, 2008, at 27). Additionally, it is undisputed that both classes are seeking injunctive relief in the form of abatement and clean water. (See, e.g., Rowe Motion at 29, n. 27).

Once again, "the more difficult issue is whether Plaintiffs can demonstrate the requisite cohesiveness among the class members." (Id. at 27). The Court must examine the elements of

12

Plaintiffs' common law claims to determine whether the presence
of individualized issues precludes a finding of cohesiveness.
"If those elements include individualized inquiries that cannot
be addressed in a manner consistent with Rule 23, then the class
cannot be certified." Hohider v. United Parcel Service, Inc.,
574 F.3d 169, 184 (3d Cir. 2009) (reversing district court's
grant of (b)(2) class certification because court could not
adjudicate plaintiffs' claims and reach a finding of class-wide
liability and relief without undertaking individualized
inquiries); see also Hydrogen Peroxide, 552 F.3d at 311 ("'If
proof of the essential elements of the cause of action requires
individual treatment, then class certification is unsuitable.'")
(quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
259 F.3d 154, 172 (3d Cir. 2001)); Goasdone v. American Cyanamid
Corp., 808 A.2d 159, 169 (N.J. Super. Ct. June 7, 2002) ("In
order to determine if the class meets the requirement of
cohesiveness under (b)(2), the court must analyze the legal and
factual issues involved in the specific case, and determine if
the claims of class members can more sensibly be adjudicated as a
group or if the case would essentially break down into litigation
of individual claims due to the presence of significant
individual issues.").[3]  Thus, Plaintiffs must demonstrate that

---

[3]  The Court notes that the exercise of breaking down each
claim to its elements and determining whether such elements are
"capable of proof through evidence that is common to the class

proposed class members can prove the elements of their common law claims through common evidence.

The Rowe Plaintiffs seek class certification of the following common law claims:  private nuisance, trespass negligence and gross negligence.  (Rowe Motion at 2).  The Scott Plaintiff seeks certification of the following common law claims: private nuisance, public nuisance, negligence and strict liability.  (Scott Motion at 2).  The Court must "examine the elements of [Plaintiffs'] claim[s] 'through the prism' of Rule 23" to determine whether class certification is proper.  <u>Hydrogen Peroxide</u>, 552 F.3d at 311.  In other words, the Court will

_____

rather than individual to its members" is appropriate in both the predominance inquiry under Rule 23(b)(3) and the cohesiveness inquiry under Rule 23(b)(2).  <u>Hydrogen Peroxide</u>, 552 F.3d at 311 (analyzing claim elements for (b)(3) certification); <u>Hohider</u>, 574 F.3d at 184 (analyzing claim elements for (b)(2) certification). This is because both inquiries aim to ensure that a proposed class can operate effectively as a class at trial and prove its claims through common evidence.  As the advisory committee notes to Rule 23 explain, in a certification analysis,

> "[a] critical need is to determine how the case will be tried.  An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."

<u>In re Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d at 318 (quoting Fed. R. Civ. P. 23 Advisory Committee's Note, 2003 Amendments).  Accordingly, in this Court's view, the exercise of breaking down each claim to its elements and determining whether such elements are "capable of proof through evidence that is common to the class rather than individual to its members" is proper not only in (b)(3) cases, but also in (b)(2) cases.

address each of these claims (combining claims that overlap) to
determine whether the task of proving each claim's elements will
require individual treatment.[4]  Hohider, 574 F.3d at 184;
Hydrogen Peroxide, 552 F.3d at 311.

### A.  Private Nuisance

Both the Rowe Plaintiffs and the Scott Plaintiff assert a
claim based on the theory of private nuisance.  As an initial
matter, the Court notes that "New Jersey courts have moved toward
a strict liability theory with respect to environmental pollution
cases and away from such common law claims as trespass and
nuisance."  Mayor and Council of Borough of Rockaway v. Klockner
& Klockner, 811 F. Supp. 1039, 1053 (D.N.J. 1993) (citing State,
Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473,
492-93 (1983); Kenney v. Scientific, Inc., 204 N.J. Super. 228,
255-56 (Sup. Court, Middlesex County 1985) (stating that "[t]here
is no need for us to be obsessed with labels, and to endeavor to

---

[4]  Despite the Court's prior explanation of what the Third
Circuit requires in a certification analysis, Plaintiffs have
again failed to perform a useful analysis in support of their
certification motion.  For each claim, Plaintiffs have simply
listed the requisite elements at the beginning and then, several
pages later, listed a host of common issues that are relevant to
the claim.  They should have addressed each element on its own
and discussed whether that particular element is subject to
common proof, as DuPont did in its opposition.  Moreover,
Plaintiffs rely on many decisions where certification was
granted, but these cases lack any analysis of the elements of
each claim and whether they are subject to common proof.
Regardless of Plaintiffs' deficiencies, however, the Court will
conduct its own analysis of the claim elements as the law
requires.

torture old remedies to fit factual patterns not contemplated when those remedies were fashioned."). However, regardless of the continuing viability of these types of common law claims in the environmental context, the Court will assess whether the elements of the claim are subject to common proof in this case for purposes of class certification.  See Player v. Motiva Enterprises, LLC, 2006 WL 166452 at *12 (D.N.J. Jan. 20, 2006).

Under New Jersey law, "the essence of a private nuisance is an unreasonable interference with the use and enjoyment of land." Sans v. Ramsey Golf and Country Club, Inc., 29 N.J. 438, 448 (1959).  To succeed on a private nuisance claim, Plaintiffs must show that "'there has been an unreasonable, unwarranted or unlawful use by a person of his real property which is resulting in a material annoyance, inconvenience or hurt.'"  State, Dept. Of Environmental Protection v. Exxon Corp., 151 N.J. Super 464, 482-83 (Ch. Div. 1977) (quoting Cherry Hill Twp. V. N.J. Racing Comm., 131 N.J. Super. 125 (Law Div. 1974), aff'd 131 N.J. Super. 482 (App. Div. 1974)).  There must be "significant harm" such that "normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable... ."  Restatement (Second) of Torts § 821F, cmt. d.  Thus, there are two elements to a private nuisance claim: 1) unreasonable use by the defendant and 2) significant harm to the plaintiff.

Plaintiffs do not analyze these elements separately, but, instead, conclusively state that because "each and every Class member's water supply has been contaminated in the same unreasonable manner and by the same party, the proofs required to prevail on Rowe Plaintiffs' nuisance theory are common to the Class." (Rowe Motion at 30).  They explain that the nuisance claim will be proven "through an abundance of common evidence[,]" including evidence of 1) DuPont's release of PFOA, 2) PFOA contamination in the PGWS groundwater, and 3) the toxic nature of PFOA.  (Id. at 30-31).  They also provide a long list of specific proof they intend to offer to support these aspects of their nuisance claim, all of which they claim are common to the entire class.  Plaintiffs further conclude that "[b]ecause the harm suffered by the Class is the contamination of the Affected Water Supplies, no individualized inquiry into a particular Class member's water consumption or exposure to [PFOA] is necessary." (Id. at 32).

In response, Defendant makes two arguments why Plaintiffs' private nuisance claim cannot be established by means of class-wide proof.  The first argument addresses the wholly separate issue of standing.  Defendant contends that "the proposed classes are overly broad" because, under New Jersey law, only those people whose property is "adjoining" to or "neighboring" the DuPont plant have standing to bring a private nuisance claim.

17

(DuPont Opp. at 35).  DuPont cites several cases to support this
position, including New Jersey Turnpike Auth. v. PPG Indus., 16
F. Supp. 2d 460, 478 (D.N.J. 1998), aff'd 197 F.3d 93 (3d Cir.
1999), which states that "[a] cause of action for private
nuisance [] is confined to situations where one's property use
interferes with another's use of neighboring or adjoining land."
Id. (citing Mayor and Council of Borough of Rockaway v. Klockner
& Klockner, 811 F. Supp. 1039, 1057-58 (D.N.J. 1993)) (emphasis
in original).

    While the plaintiff's land must be near the nuisance such
that the nuisance actually affects his enjoyment of land, it need
not be immediately contiguous.  Indeed, none of the cases DuPont
relies on specifically denies a plaintiff standing on the grounds
that his land is not geographically contiguous to the source of
the nuisance.  Rather, those cases emphasized the "neighboring or
adjoining" requirement for a different reason:  a nuisance claim
requires a contemporaneous relationship between the plaintiff and
defendant.  In other words, a successor landowner cannot assert a
nuisance claim against a predecessor landowner because the
nuisance property and the affected property are one and the same.
T&E Indus., Inc., v. Safety Light Corp., 123 N.J. 371, 385 (1991)
(noting that "[h]istorically, private-nuisance law resolved
disputes between neighboring property owners over contemporaneous
land uses" and, thus, "did not cover conditions existing on the

very land transferred"); <u>Sarnicandro v. Lake Developers, Inc.</u>, 55
N.J. Super. 475, 479-81 (App. Div. 1959) (discussing nuisance
liability in the context of property transfers between a vendor
and vendee); <u>Klockner & Klockner</u>, 811 F. Supp. at 1057-58
(dismissing tenant's private nuisance claim against landlord
because the nuisance was on the very same property as opposed to
an "adjoining" property).

　　　This view is confirmed by the existence of other New Jersey
cases where nuisance claims have succeeded on the basis of
environmental contamination.  <u>See, e.g.</u>, <u>Ayers v. Jackson Twp.</u>,
106 N.J. 557 (1987) (affirming relief to 339 residents based on
nuisance claims for contamination of groundwater caused by
leaking landfill).  In <u>Ayers</u>, there can be no doubt that not all
339 residents owned or resided on property contiguous to the
actual leaking landfill.  Accordingly, the Court rejects DuPont's
first argument against Plaintiffs' nuisance claim.

　　　Second, DuPont argues that Plaintiffs' private nuisance
claim must fail because Plaintiffs have not offered any evidence
of common "significant harm" (element 2 of a nuisance claim).
(DuPont Opp. at 36).  Their argument is actually two-fold:
Defendant contends that the alleged harm Plaintiffs suffer is 1)
not "significant" and 2) not common to all proposed class
members.  As to the first problem, Defendant claims that
Plaintiffs do not demonstrate "a real and appreciable

interference" but, rather, "incorrectly argue that fear of adverse health effects, whether or not based on verifiable facts, is sufficient to support a private nuisance claim." (DuPont Opp. at 36). Moreover, Defendant argues, even if fear of adverse health effects does constitute "significant harm," Plaintiffs have failed to show that all proposed class members have such fear.

The law is clear that nuisance liability attaches only when there is "'significant harm, of a kind that would be suffered by a normal person in the community.'" <u>South Camden Citizens in Action v. New Jersey Dept. of Environmental Protection</u>, 254 F. Supp. 2d 486, 504 (D.N.J. 2003) (quoting Restatement (Second) of Torts § 821F). "Significant harm" means

> harm of importance, involving more than slight
> inconvenience or petty annoyance. The law does not
> concern itself with trifles, and therefore there must
> be a real and appreciable invasion of the plaintiff's
> interests before he can have an action for either a
> public or a private nuisance. In the case of a ...
> private nuisance, there must be a real and appreciable
> interference with the plaintiff's use or enjoyment of
> his land before he can have a cause of action.

<u>Id.</u> (quoting Restatement (Second) of Torts § 821F at cmt. b). However, the Restatement also states that,

> [i]n determining whether the harm would be suffered by
> a normal member of the community, <u>fears and other
> mental reactions common to the community are to be
> taken into account</u>, even though they may be without
> scientific foundation or other support in fact. Thus
> the presence of a leprosy sanatarium in the vicinity of
> a group of private residences may <u>seriously interfere</u>
> with the use and enjoyment of land because of the

20

> <u>normal fear</u> that it creates of possible contagion, even
> though leprosy is in fact so rarely transmitted through
> normal contacts that there is no practical possibility
> of communication of the disease.

Restatement (Second) of Torts § 821F at cmt. f (emphasis added).

In this Court's view, this comment speaks directly to the issue

of whether "fear" can be sufficient to constitute "significant

harm."  According to the definition of "significant harm" in

comment b, "there must be a real and appreciable interference

with the plaintiff's use or enjoyment of his land... ."

Restatement (Second) of Torts § 821F at cmt. b.  The example in

comment f explains that "fear" can "seriously interfere with the

use and enjoyment of land[.]"  <u>Id.</u> at cmt. f.  Thus, this Court

rejects Defendant's argument that fear cannot constitute

significant harm.[5]

Turning to the issue of commonality, DuPont argues that the

alleged fear Plaintiffs claim to suffer is not common to all

proposed class members.  For instance, DuPont contends, many of

the named plaintiffs demonstrated "a total lack of concern" about

PFOA when they testified that they have not discussed their

potential PFOA exposure with their primary care physicians and

that they continue to drink their tap and well water.  (DuPont

---

[5]  DuPont also argues that "comment f has <u>never</u> been cited,
much less adopted, by any reported New Jersey or Third Circuit
case."  (DuPont Opp. at 37).  However, DuPont cites to no
authority explicitly rejecting comment f.  Given that many New
Jersey cases rely on comment b and none rejects comment f, it
seems reasonable to presume the authority of the entire section.

Opp. at 38).

The Court first questions DuPont's characterization of the named plaintiffs as unconcerned about PFOA in their drinking water. Indeed, the Court recalls that DuPont, in opposing Plaintiff's medical monitoring claim, previously argued that "[n]one of the Named Plaintiffs has relied upon unfiltered PGWS water as the primary residential source of drinking water since at least early 2007. Virtually all drink primarily bottled water. Five of nine Named Plaintiffs use bottled water exclusively for cooking." (DuPont Opp. to Plaintiffs' initial motions for certification [06-1810, Dkt. No. 176] at 43-44). Additionally, Dr. Levy testified at the certification hearing held on November 10 and 20, 2008, that Mr. Rowe himself has a lower blood serum PFOA level at least in part because he has "been using bottled water for the last eight years." (Hearing Tr. at 208:21-25). This information suggests that the named plaintiffs are very concerned about PFOA in their water, contrary to what DuPont is now arguing.

However, regardless of whether or not all the named plaintiffs actually suffer fear due to their potential PFOA exposure, that is not the proper standard to consider. Rather, as stated above, the question for determining whether there is a "significant harm" is based on the perception of "a normal person in the community." Restatement (Second) of Torts § 821F.

Comment d of the Restatement specifically addresses the issue of subjectivity:

> The standard for the determination of significant
> character is the standard of normal persons or property
> in the particular locality.  If normal persons living
> in the community would regard the invasion in question
> as definitely offensive, seriously annoying or
> intolerable, then the invasion is significant.

Restatement (Second) of Torts § 821F at cmt. d.  Thus, the subjective opinions of the named plaintiffs are not dispositive as to whether a nuisance claim survives.[6]

Moreover, comment d also addresses the particular situation DuPont describes, where some people do not view the harm as significant:

> when the invasion is of a kind that the normal
> individual in the community would find definitely
> annoying or offensive, the fact that those who live in
> the neighborhood are hardened to it and have no
> objection will not prevent the plaintiff from
> maintaining his action.  For example, the noise of a
> boiler factory next door may be a private nuisance even
> though the plaintiff and others who live in the
> vicinity are stone deaf and cannot hear it.  The
> deafness of the plaintiff himself will affect the
> damages that he can recover, but it does not prevent
> the existence of a genuine interference with the use

---

[6]  Under Rule 23(a), the individuals selected to be the named plaintiffs are supposed to be "typical" of the proposed class of plaintiffs they seek to represent.  Indeed, in this case, the Court has found that Plaintiffs have satisfied the typicality requirement.  Thus, the opinions and fears of the named plaintiffs are presumably representative of those of the entire class and, therefore, also a good indication of the perception of "a normal person in the community."  Accordingly, the Court recognizes that even though the subjective opinions of the named plaintiffs may not dispositive in determining whether there is significant harm, they are still relevant to the issue.

and enjoyment of his land as, for example, for the
purpose of entertaining guests.

Id. (emphasis added); see also Board of Health of Lyndhurst Twp.
v. United Cork Cos., 172 A. 347, 351 (N.J. Ch. 1934) (noting the
"well-established rule that the charge of nuisance, predicated
upon conditions offensive to person in general, cannot be
successfully met nor overcome by merely showing that to some
persons such things are not at all offensive, disagreeable, or
unpleasant"). Thus, even if some of the named plaintiffs are not
afraid of the effects of PFOA exposure themselves (a fact which
has not and need not be proved at this juncture), the presence of
PFOA in their drinking water may still significantly affect their
use and enjoyment of land in other ways, thereby causing
significant harm.

In sum, the Court rejects DuPont's commonality argument and
finds that the element of significant harm to the proposed class
members is subject to common proof.

Notwithstanding the Court's holding as to the second element
of Plaintiffs' nuisance claim, the Court must still address the
first element of "unreasonable, unwarranted or unlawful use."
Neither party specifically discusses whether this element may be
proved on a class-wide basis. This element raises the issue of
DuPont's conduct vis-a-vis the proposed class members. In this
Court's view, there is no distinction between the proposed class
members in terms of whether DuPont's conduct is reasonable. In

other words, to the extent DuPont's conduct is deemed unreasonable as to any of the proposed class members, it must be unreasonable as to all the proposed class members. This is consistent with the use of an objective standard (i.e., "normal person in the community") for determining "significant harm."

Given the above analysis, the Court holds that Plaintiff's private nuisance claim is appropriate for class treatment. The issues relating to this claim turn on the conduct of Defendant and the objective perception of a "normal person" in the community rather than the conduct and perceptions of the individual class members. See, e.g., In re Mercedes-Benz Tele Aid Contract Litigation, 257 F.R.D. 46, 73 (D.N.J. 2009).

However, there is a very simple yet critical problem that neither party addressed in their submissions. "In order to effect a private nuisance [based on contaminated groundwater], the contaminated water must reach the groundwater below the plaintiff's property or affect a direct supply of water on an individual's property." Rhodes v. E.i. DuPont De Nemours and Co., 2009 WL 3080188, at *12 (S.D. W. Va. Sept. 28, 2009) (citing Anderson v. W.R. Grace & Co., 628 F.Supp. 1219, 1233 (D. Mass. 1986); Adkins v. Thomas Solvent Co., 440 Mich. 293 (Mich. 1992)). When the contamination only affects a plaintiff's municipal water supply, as opposed to his private water supply on his property, he has no claim for a private nuisance; rather, he must bring a

claim based on a theory of public nuisance.  Here, the vast
majority of the proposed class members do not allege
contamination of their private wells, but contamination of their
municipal water.  Only those proposed class members whose private
wells are allegedly affected by the contamination may bring a
private nuisance claim.  Accordingly, for purposes of a private
nuisance claim, the Court will certify a subclass of all
individuals who, as of the date of this Opinion, have an
ownership interest in a private well within a two-mile radius of
DuPont's Chambers Works plant, which supplies drinking water
containing PFOA.[7]

### B.  Public Nuisance

Scott Plaintiff seeks class certification of her public
nuisance claim.  According to the Restatement, "[a] public
nuisance is an unreasonable interference with a right common to
the general public."  Restatement (Second) of Torts § 821B(1).
Therefore, the elements are 1) an unreasonable interference and
2) a right common to the general public.  The first element
addresses DuPont's conduct, which, as discussed above, is the
same vis-a-vis all the proposed class members.  The second

---

[7]  Although the Court, through its own research, is aware
that under New Jersey law, "a nuisance <u>may</u> be a public and a
private one at the same time," the parties have failed to present
any facts or arguments as to how this principle would apply in
this case.  <u>Malhame v. Borough of Demarest</u>, 162 N.J. Super. 248,
260 (Law Div. 1978) (citing <u>Cresskill v. Dumon</u>, 28 N.J. Super.
26, 38 (Law Div. 1953)) (emphasis added).

element is, by definition, common to all proposed class members
who derive their water from the municipal water supply.  Thus,
the converse of the private nuisance claim applies – only those
proposed class members whose municipal water is affected by the
contamination may bring a public nuisance claim.

However, in addition to these two elements, the parties
raise the issue of standing because it presents a third element
that is critical to Plaintiff Scott's public nuisance claim.
DuPont argues that, under New Jersey law, in order to bring a
public nuisance claim, a plaintiff must demonstrate that she has
suffered a "special injury" – i.e., "harm of a kind different
from that suffered by other members of the public." <u>In re Lead
Paint Litigation</u>, 191 N.J. 405, 426 (2007) (quoting Restatement
(Second) of Torts § 821C(1)) (emphasis added).  Under New Jersey
law, which is based on the Restatement, the following
people/entities may recover for public nuisance depending on the
type of action they bring:

> (1) In order to recover <u>damages</u> in an individual action
> for a public nuisance, one must have suffered harm of a
> kind different from that suffered by other members of
> the public exercising the right common to the general
> public that was the subject of interference.

> (2) In order to maintain a proceeding to <u>enjoin</u> to
> [sic] <u>abate</u> a public nuisance, one must

> (a)  have the right to recover damages, as indicated in
>      Subsection (1) [which requires special injury], <u>or</u>

> (b)  have authority as a public official or public
>      agency to represent the state or a political

subdivision in the matter, <u>or</u>

(c)   have standing to sue as a representative of the general public, as a citizen in a citizen's action or as <u>a member of a class in a class action</u>."

<u>In re Lead Paint Litigation</u>, 191 N.J. 405, 426-27 (2007) (quoting Restatement (Second) of Torts § 821C(2)) (emphasis added).

Here, Plaintiff Scott seeks to enjoin the alleged nuisance. Based on this Court's plain reading of § 821C(2)(c) of the Restatement (which was quoted by the New Jersey Supreme Court in <u>Lead Paint Litigation</u>), she is not required to demonstrate any special injury.  Of course, whether or not she will ultimately be deemed to "have standing to sue ... as a member of a class in a class action" goes to whether her claim will survive and is not relevant to the Court's certification analysis.

Accordingly, for purposes of a public nuisance claim, the Court will certify a subclass of all individuals who, as of the date of this Opinion, are residential water customers of PGWS that have an ownership interest (meaning own or lease) in their real property served by PGWS, which supplies drinking water containing PFOA.

**C.  Trespass**

Rowe Plaintiffs also seek certification of their common law trespass claim.  According to New Jersey law, "[t]respass constitutes the unauthorized entry (usually of tangible matter) onto the property of another."  <u>PPG Indus., Inc.</u>, 16 F. Supp. 2d

28

at 478 (citing <u>Harvard Industries, Inc. v. Aetna Casualty & Surety Co.</u>, 273 N.J. Super. 467, 479 (Law. Div. 1993)).  Thus, there are two elements to this claim:  1) an entry onto another's property, and 2) the entry is unauthorized.

In support of their trespass claim, Rowe Plaintiffs argue that they will prove such claim "through common evidence of DuPont's release of [PFOA] into the environment and the subsequent contamination of the Affected Water Supplies."  (Rowe Motion at 36).  They explain that "the evidence proving DuPont's acts and omissions causing [PFOA] to enter the Affected Water Supplies of the Class will be the same for each class member" and that "because the trespass is complete upon the contamination itself, ... no individual inquiry regarding the level of contamination, level of exposure, or individual consumption habits is required."  (<u>Id.</u> at 37).  However, this argument fails to address the two specific elements identified above and, once again, relies on assumptions by using the vague term "contamination."  More specifically, Rowe Plaintiffs' theory assumes that 1) all proposed class members' water contains PFOA, and 2) that all proposed class members object to the presence of even trace amounts of PFOA.

DuPont argues that "Plaintiffs cannot show on a class-wide basis that each class member suffered an 'entry' of PFOA via drinking water attributable to DuPont... ."  (DuPont Opp. at 43).

To demonstrate that all proposed class members have suffered an entry of PFOA, Plaintiffs would necessarily have to sample each residential PGWS customer's water, which they have not done. Moreover, even if they did undertake this significant task, it is possible that not every sample would reveal the presence of PFOA. Indeed, DuPont claims that "nearly half of the private wells within the geographic scope of the proposed class definition that have been tested to date have failed to show the presence of any PFOA." (Id. at 42).

Even if Rowe Plaintiffs could show that PFOA entered the property of all proposed class members, DuPont correctly argues with regard to the second element that "the question of authority and consent necessarily differs among the putative class members." (DuPont Opp. at 44 (citing Arch v. American Tobacco Co., Inc., 175 F.R.D. 469, 491-92 (E.D. Pa. 1997) (issue of consent requires individualized determinations that preclude certification).  As DuPont explains, "[g]iven that trace levels of PFOA from many sources are ubiquitous in the environment and in the blood of the general population – and that no scientific evidence shows that exposures at such levels cause any human disease – any number of putative class members would take no issue with minute amounts of PFOA in their drinking water." (Id.).

Given that the two elements necessary to prove a trespass

30

claim require individualized inquiries, the Court cannot certify this claim for class treatment, perhaps illustrating why we should not "torture old remedies to fit factual patterns not contemplated when those remedies were fashioned." Kenney, 204 N.J. Super. at 255-56.

### D. Negligence and Gross Negligence

Both Rowe Plaintiffs and Scott Plaintiff seek certification of their negligence claims; additionally, Rowe Plaintiffs seek certification of their gross negligence claim.

To succeed on a negligence claim under New Jersey law, a plaintiff must show "that there was a duty on the part of the defendant towards the plaintiff, a breach of that duty, and evidence that the breach was the proximate cause of the injury." MCI Worldcom Network Servs., Inc., v. Glendale Excavation Corp., 224 F. Supp. 2d 875, 878 (D.N.J. 2002) (citing Harrah v. Minnesota Min. and Mfg. Co., 809 F. Supp. 313, 318 (D.N.J.1992); Labracio Family P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 161, 773 A.2d 1209 (2001)). Thus, a negligence claim has four elements: duty, breach, causation, injury.

The first element, duty, addresses whether DuPont owed a duty to the proposed class members. Because all the proposed class members are part of the same community, they are identical in terms of their legal relationship to DuPont. In other words, barring any exceptional circumstances, which neither party has

31

raised, whatever duty (if any) DuPont owes to one proposed class member, DuPont owes the same duty (if any) to the next proposed class member.  Thus, this first element is subject to common proof.

However, the elements of breach, causation and damages are problematic for Plaintiffs.  Depending on how the duty is defined, a breach may or may not occur with respect to the individual proposed class members.  For instance, if the duty DuPont owes to all individuals is to refrain from releasing any PFOA into the environment, the fact that DuPont has released PFOA into the environment would constitute a breach as to all.  However, if DuPont's duty is to refrain from causing a PFOA level in the public drinking water beyond, for example, the level established by the New Jersey Department of Environmental Protection (NJDEP), .04 ppb, the issue of whether or not DuPont breached that duty would necessarily depend on the amount of PFOA found in each individual's drinking water.  Without the benefit of an established duty, the Court cannot determine whether the issue of breach is common among the proposed class members.

Concerning the issue of injury/damages, the Court, in its prior Opinion, rejected Plaintiffs' claim for medical monitoring because, inter alia, it found that Plaintiffs could not demonstrate on a class-wide basis that they have all suffered an increased risk of disease.  (Opinion, dated Dec. 23, 2008).

32

Accordingly, Plaintiffs now seek to declare the contamination
<u>itself</u> to be an injury, without so much as defining a threshold
level of contamination.

Contrary to Rowe Plaintiffs' allegation, contamination alone
does not constitute an "injury" sufficient to substantiate a
negligence claim.  In support of their position, Plaintiffs cite
<u>Burrough v. New Jersey Gas Co.</u>, 110 A. 915, 917-18 (N.J. Err. &
App. 1920).  In that case, a single plaintiff brought suit
against a gas pipe manufacturer for damages caused by a broken
gas pipe.  The court found that the accident caused plaintiff's
well to be "so contaminated as to be unfit for use" and, thus,
plaintiff was able to recover the cost of digging a new well.  As
the facts of the case demonstrate, the case does not stand for
the proposition that any contamination itself constitutes an
"injury" for purposes of a negligence claim.  Rather, the
contamination caused plaintiff's well to be "unfit for use" and,
thus, plaintiff was forced to dig a new well.  The "injury" for
which he was entitled to recover was the cost of the new well.
This concept is perhaps better explained in <u>Player v. Motiva
Enterprises, LLC</u>, 2006 WL 166452 at *9 (D.N.J. Jan. 20, 2006):
"the release of contaminants into the groundwater aquifer does
not itself generate damages, unless Plaintiffs can show that they
suffered harm."  <u>Id.</u> (granting summary judgment on negligence
claim where plaintiffs failed to present evidence of damages that

resulted from groundwater contamination).[8]

Although Plaintiffs need not set forth their actual evidence of damages at the certification juncture, they must, at the very least, allege that all proposed class members suffered legally cognizable damages and demonstrate how such damages are subject to common proof.  Plaintiffs allege that all proposed class members suffered damages in the form of "contamination" but they do not set any threshold level of contamination or allege any derivative harm from this contamination.  Through this allegation, Plaintiffs attempt to satisfy the requirement that the damages be common to all proposed class members[9], but they fail to state any legally cognizable damages, as an allegation of unspecified contamination, without more, is cannot be considered an actual injury.

It follows that without a common injury, there can be no common causation, as there is nothing to cause.

Accordingly, Plaintiffs have failed to show that their

_____

[8]  In <u>Player</u>, the plaintiffs sought medical monitoring and property damages, arguing that they had suffered a distinctive increased risk of disease and diminution in property value.  <u>Id.</u> The court denied them both.

[9]  Even the commonality of the alleged contamination is dubious, given the current class definition, as DuPont claims that "nearly half of the private wells within the geographic scope of the proposed class definition that have been tested to date have failed to show the presence of any PFOA."  (DuPont Opp. at 42).

negligence claim is appropriate for class treatment.

**E.  Strict Liability**

Finally, Scott Plaintiff seeks class certification for her strict liability claim.  Under New Jersey law, "a landowner is strictly liable to others for harm caused by toxic wastes that are stored on his property and flow onto the property of others." State, Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473, 488 (1983).  "[T]hose who use, or permit others to use, land for the conduct of abnormally dangerous activities are strictly liable for resultant damages."  Id.  Thus, "[t]o prevail on a claim for strict liability, two elements must be demonstrated: (1) that the defendant's disposal of waste constituted an 'abnormally dangerous activity,' and (2) that such activity has harmed the plaintiff."  Interfaith Community Organization v. Honeywell Intern., Inc., 263 F. Supp. 2d 796, 850 (D.N.J. 2003) (citing T & E Industries, Inc. v. Safety Light Corp., 123 N.J. 371 (1991); PPG Indus., Inc., 16 F. Supp. 2d at 479; Ventron, 94 N.J. at 488).

As to the first element, "whether an activity is abnormally dangerous is to be determined on a case-by-case basis, taking all relevant circumstances into consideration."  Ventron, 94 N.J. at 491.  Specifically, the Court should consider the following factors:

(a) existence of a high degree of risk of some harm to

35

the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Id. at 491-92 (citing Restatement (Second) of Torts § 520 (1977)).

Defendant argues that based on the Court's ruling that increased risk of disease cannot be proven on a classwide basis, Scott Plaintiff similarly cannot prove factors (a) and (b) through common proof.  (DuPont Opp. at 26).  However, DuPont fails to recognize that all of these factors are designed to address the nature and reasonableness of the defendant's activity, not the particular harm (which is addressed in the second element of the strict liability claim).  In other words, the focus of the "abnormally dangerous activity" inquiry is on characterizing Defendant's conduct as it affects the surrounding community in general.  Variation in effects among particular

36

individual community members is not relevant to the analysis of this element.  For example, in looking at factor (a), the issue is whether DuPont's activity poses "a high degree of risk of some harm to ... <u>others</u>" – i.e., not necessarily to all.  Likewise, for factor (b), the issue is the "likelihood that the harm ... will be great" - i.e., the harm need not be of the same severity as to each and every person to satisfy this element.  If only ten percent of the community fell fatally ill as a result of DuPont's activity, the harm would still be considered "great."  Indeed, if this were not true, there would be no such thing as an "abnormally dangerous" activity because there is always some variation in the extent of actual harm among accident victims.  The same commonality applies to the other factors, (c)-(f), as they all concern the nature of the defendant's conduct as it relates to the community.

Turning to the second element of a strict liability claim, the question is whether DuPont's activity "has harmed the plaintiff." <u>Honeywell Intern., Inc.</u>, 263 F. Supp. 2d at 850. Scott Plaintiff contends that "no individual inquiry regarding the level of contamination, level of exposure, or individual consumption habits is required[,]" relying on <u>Collins v. Olin Corp.</u>, 248 F.R.D. 95 (D. Conn. 2008).  (Scott Motion at 43).  In that case, the court certified a class of plaintiffs pursuing, inter alia, common law claims based on contamination of their

soil and groundwater.  The plaintiffs sought injunctive and declaratory relief as well as damages for diminution in property value, the loss of use and enjoyment of their properties, emotional distress, and recovery of response costs incurred to address the contamination.  The court did not engage in a detailed analysis of the elements of each claim but did list the "common issues identified by the plaintiffs" with regard to each claim.  Id. at 103, n. 6.  As to the strict liability claim, the court listed four common issues, all of which related to the defendant's conduct and knowledge.  Id.  Indeed, the court offered no discussion of the harm element of plaintiff's strict liability claim, but in the conclusion, simply stated that "the general nature of the harms potentially caused by these contaminants will also be determined on a class-wide basis."  Id. at 106.  Given the dearth of analysis, this Court finds Plaintiff's reliance on the outcome in Collins unavailing.

Defendant points out that Plaintiff Scott has not presented any evidence of classwide property damage and asserts that "[t]he only claimed harm she identifies is the presence of water in class members' taps that allegedly contains PFOA." (DuPont Opp. at 26).  As the Court explained above, the allegation of "contamination" alone is not a legally cognizable harm and cannot suffice for purposes of establishing a common harm among all proposed class members.

38

Because Scott Plaintiff cannot demonstrate that both elements of her strict liability claim are subject to common proof, the Court cannot certify this claim for class treatment.

**D.  Rule 23(c)(4)**

To the extent the Court denies certification of their common law claims, both Rowe and Scott Plaintiffs seek class certification of certain issues relating to those claims pursuant to Rule 23(c)(4).  Specifically, Plaintiffs seek certification of the following issues[10]:

1.  Whether DuPont released PFOA from DuPont's Chambers Works Plant in New Jersey into the environment surrounding the Plant;

2.  Whether contamination of the water was caused by DuPont's releases of PFOA;

3.  Whether PFOA is toxic and/or hazardous;

4.  Whether DuPont's releases of PFOA interfered with the use and enjoyment of the water used by the members of the proposed classes;

5.  Whether DuPont's releases were unreasonable under the circumstances;

6.  Whether DuPont's releases were unauthorized;

7.  Whether DuPont owed a duty to the members of the proposed classes not to release PFOA into the environment;

8.  Whether DuPont's releases constituted a breach of DuPont's duty to the members of the proposed classes;

---

[10]  Except where noted, both Rowe and Scott Plaintiffs seek certification of all the listed issues.

9.    Whether DuPont's releases constituted a breach of care that was willful, wanton or reckless;

10.   Whether DuPont's actions and/or omissions to cover up its PFOA releases and/or avoid remediation was willful, wanton or reckless (Rowe only);

11.   Whether the PFOA contamination should be abated and/or remediated;

12.   Whether DuPont's release of PFOA constitutes an "abnormally dangerous activity" (Scott only); and

13.   Whether alternate drinking water should be made available to members of the proposed classes pending abatement/remediation.

(Rowe Motion at 47-48; Scott Motion at 46).

Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The Court is instructed to consider the following factors in determining whether it is "appropriate" to certify a class "with respect to particular issues," Fed. R. Civ. P. 23(c)(4):

> the type of claim(s) and issue(s) in question; the overall complexity of the case and the efficiencies to be gained by granting partial certification; the substantive law underlying the claim(s), including any choice-of-law questions it may present; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect that resolution of the proposed issues class will have; and so forth.

Hohider, 574 F.3d at 201.

Certification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are

40

first met.  7AA C. Wright, A. Miller & R. Kane, Federal Practice
and Procedure § 1790, at 590 (2005)(citing <u>Valentino v. Carter-
Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1997)).  Because the
Court has found that both Rowe and Scott Plaintiffs have met the
requirements of part (a), the question is whether the proposed
issues satisfy the "cohesiveness" requirement of part (b).  Based
on the extensive analysis above, there are some issues common to
all proposed class members.  However, the Court should only
certify those issues that would materially advance the
litigation, keeping in mind the factors outlined above.  <u>See,
e.g.</u>, <u>In re Tetracycline Cases</u>, 107 F.R.D. 719, 722 (W.D. Mo.
1985) (finding that certification pursuant to Rule 23(c)(4) is
only appropriate where it would "materially advance the
disposition of the litigation as a whole").  The Court will
address these issues within the context of the claims to which
they relate.[11]

    As to Plaintiffs' claims for negligence/gross negligence,
the Court finds the following common issues:

    1.    Whether PFOA is toxic and/or hazardous;

    2.    Whether DuPont owed a duty to the members of the
          proposed classes concerning its release of PFOA into
          the environment;

---

    [11]  Because the Court has already determined that
Plaintiffs' nuisance claims should be certified for class
treatment, it need not evaluate whether the particular issues
relevant to those claims should be certified for class treatment.

     3.     Whether DuPont released PFOA from DuPont's Chambers Works Plant in New Jersey into the environment surrounding the Plant;

     4.     Whether DuPont's release of PFOA was willful, wanton or reckless; and

However, in this Court's view, resolution of these limited issues will not materially advance Plaintiffs' pursuit of their negligence/gross negligence claims because Plaintiffs will still have to address the elements of breach, causation and injury individually. McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 234 (2d Cir. 2008) (finding that "given the number of questions that would remain for individual adjudication, issue certification would not reduce the range of issues in dispute and promote judicial economy") (internal quotation omitted). Moreover, resolution of these few issues will not bring Plaintiffs significantly closer to their goal of abatement/remediation than class certification of their nuisance claims will, which this Court has determined is appropriate.

As to Scott Plaintiff's claim for strict liability, the Court finds the following common issues:

1.    Whether PFOA is toxic and/or hazardous;

2.    Whether DuPont released PFOA from DuPont's Chambers Works Plant in New Jersey into the environment surrounding the Plant;

3.    Whether DuPont's release of PFOA constitutes an "abnormally dangerous activity."

Unlike the negligence claims, the Court finds that the resolution of these issues will materially advance Plaintiff Scott's pursuit of a strict liability claim.  Indeed, if these issues are resolved as a class, the only element left for proposed class members to prove individually is harm.  Because partial certification as to these issues will materially advance the litigation and result in a significant gain of efficiencies, the Court finds class certification of these issues appropriate. However, because the first two issues will necessarily be resolved in Plaintiffs' nuisance claims, only the third issue should be separately certified.  Accordingly, the Court will certify the issue of whether DuPont's release of PFOA constitutes an "abnormally dangerous activity" for class treatment.

## IV.  CONCLUSION

For the reasons stated above, the Court will grant Rowe Plaintiffs' motion for certification of common law claims only to allow a claim for private nuisance by a subclass of private well owners; the Court will deny all other aspects of the motion.  As to the Scott Plaintiff's motion for certification of common law claims, the Court will grant the motion only to allow 1) a claim for private nuisance by a subclass of private well owners, 2) a claim for public nuisance by a subclass of PGWS customers, and 3) class treatment of the strict liability issue (i.e., whether

43

DuPont's release of PFOA constitutes an "abnormally dangerous

activity"); the Court will deny all other claims and issues.  An

accompanying Order shall issue this date.


Dated: October 9, 2009          s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE