IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| RICHARD A. ROWE, MARY L. CARTER, MICHELE E. TOMARCHIO, REGINA TROUT, ALLEN K. MOORE, CATHERINE A. LAWRENCE, and KATHLEEN K. LEMKE, as parent and personal representative of DJL, Jr., a minor, individually and on behalf of themselves and all others similarly situated, | : : : : : : : : : | |
| Plaintiffs, | : | Civil No. 06-1810-RMB-AMD |
| v. | : : | CLASS ACTION |
| E. I. du PONT de NEMOURS & COMPANY, | : : : | |
| Defendant. | : : : | |
| MISTY SCOTT, on behalf of herself and all others similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil No. 06-3080-RMB-AMD |
| E. I. du PONT de NEMOURS & COMPANY, | : : | CLASS ACTION |
| Defendant. | | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND TO COMPEL PRODUCTION OF DOCUMENTS

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ ii

I.     INTRODUCTION ........................................................................................1

II.    STATEMENT OF FACTS ...........................................................................1

III.   ARGUMENT................................................................................................ 16

       A. Plaintiffs Have Engaged in a Good Faith Effort to Resolve This
          Dispute...................................................................................................... 16

       B. Despite Plaintiffs' Attempts to Resolve This Dispute, DuPont Has Not
          Produced the Documents...................................................................... 18

       C. DuPont Should be Sanctioned for Failure to Supplement Discovery
          and Failure to Comply With the Court's Order ...................................23

              1. DuPont should be precluded from referencing or submitting
                 the withheld evidence.........................................................................25

              2. In the alternative, DuPont should be compelled to produce the
                 withheld evidence.................................................................................28

              3. DuPont should be ordered to pay Plaintiffs' expenses incurred
                 in this discovery dispute. ..................................................................... 29

IV.    CONCLUSION ........................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

Page

**CASES**

*Access 4 All, Inc. v. Ani Association, Inc.*, 2007 WL 178239 (D.N.J. 2007) ..............
.................................................................................................... 25, 27, 29

*AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255 (3rd Cir. 2008) ........ 19

*Grant v. Omni Health Care Systems of NJ, Inc.*, 2009 WL 3151322 (D.N.J. 2009)
................................................................................................................ 25

*Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100 (3rd Cir. 2009)
................................................................................................................ 19

*In re Fine Paper Antitrust Litigation*, 685 F.2d 810 (3rd Cir. 1982) .................... 28

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, ___
F.R.D. ___, 2010 WL 184312  (S.D.N.Y. January 15, 2010) ................................ 22

*Wachtel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. 2006) ....... 23, 24, 25, 26, 27, 29

*Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3rd Cir. 2003) .........................25, 26, 27

**CIVIL RULES**

Fed. R. Civ. P. 26(e) ....................................................................................... *passim*

Fed. R. Civ. P. 37(a) ...............................................................................1, 16, 29, 30

Fed. R. Civ. P. 37(b) ........................................................... 1, 16, 23, 24, 25 29

Fed. R. Civ. P. 37(c) ...............................................................................1, 24, 25, 29

**OTHER SOURCES**

Black's Law Dictionary 998 (8th ed, 2004) ...........................................................19

## I.  INTRODUCTION

On December 18, 2008, this Court entered an Order requiring the supplementation of discovery in both actions pending against Defendant E.I. du Pont de Nemours & Co. ("DuPont"): *Rowe et al v. E.I. du Pont de Nemours & Company*, Civil Action No. 06-cv-1810 ("*Rowe*") and *Scott v. E.I. du Pont de Nemours & Company*, Civil Action No. 06-cv-3080 ("*Scott*").  (December 18, 2008 Order, *Rowe* Doc. 261/*Scott* Doc. 203) (the "Order").  Despite Plaintiffs' repeated efforts to obtain from DuPont all documents required under the Order, DuPont has failed to produce such documents and has not committed to produce the required documents.  Plaintiffs have attempted repeatedly to engage in good faith efforts to resolve this dispute with DuPont outside of Court, but have been unable to reach a resolution.  *See* Affidavit of Robert A. Bilott ("Bilott Aff."), attached.   Plaintiffs, therefore, request the imposition of sanctions under Rules 37(b) and (c).  Alternatively, pursuant to the Court's Order, Rule 26(e)(1)(A), and Rule 37(a), Plaintiffs seek to compel DuPont to produce documents as specified in that Order.  Under Rules 37(a)(5), 37(b)(2)(C), and 37(c)(1)(A) Plaintiffs also seek recovery of their expenses incurred in pursuing this Motion.

## II.  STATEMENT OF FACTS

From the onset of these cases, Plaintiffs have been seeking from DuPont production of information relating to the derivation of appropriate safety levels for

PFOA in drinking water and the assessment of potential risks from exposure to PFOA in drinking water.  Based on DuPont's practice in prior litigation of engaging in negotiations with federal and state regulators on such issues without producing documents that would have revealed that such negotiations were occurring until well after the negotiations were over, Plaintiffs included discovery requests at the beginning of this litigation that DuPont produce its communications with governmental entities relating to PFOA.  (Bilott Aff., at Ex. 1 at p. 15 at ¶ 9, p. 16 at ¶ 14, p. 18 at ¶ 22 .)  Because of the importance of this discovery to material issues in this litigation, Plaintiffs also sought (and the Court later ordered) DuPont to periodically supplement its production of responsive information to ensure that DuPont would continue to produce such documents to Plaintiffs, even though the formal discovery period had ended.  (*See* Order (Bilott. Aff. at Ex. 22).)

After DuPont objected to providing periodic, supplemental discovery on all relevant issues, the parties eventually agreed to limit the duty to supplement to information falling within only certain, specified categories, as set forth in the Order, including: "Communications with USEPA or any New Jersey State, County, or Local authority relating or referring to PFOA;" information relating to "Remedial technologies to remove PFOA from air, water, or soil, or analytical techniques to test for PFOA in air, water, or soil;" "Articles, abstracts, manuscripts, studies, reports, or other documents prepared for publication and/or peer review

2

that relate or refer to PFOA;" "Documents that relate or refer to animal or human blood testing for PFOA, except as otherwise ordered previously by the Court;" "Documents relating or referring to any medical surveillance or monitoring, or biological surveillance or monitoring resulting from alleged human exposure to PFOA;" and "Documents that relate or refer to any analysis or assessment of risk to human health or any health effect or disease resulting from exposure to PFOA in drinking water."  (Order, at 3-4.)  Thus, documents setting forth DuPont's views on PFOA risk assessment, animal or human blood testing for PFOA, and/or medical/biological surveillance/monitoring, fall squarely within the scope of the subject matters specifically identified for supplementation in the Court's Order.

The only responsive documents falling within these specific categories that DuPont may exclude from its supplemental, monthly productions are those that are either privileged or not "material."  (*See* Order, at 2)  Because DuPont's initial collection of supplemental, responsive documents is made available only to DuPont's counsel, DuPont and its counsel necessarily decide what is deemed "material," with no opportunity for Plaintiffs to know what documents were excluded on that basis.  Plaintiffs have, therefore, necessarily relied on DuPont's supplemental productions since entry of the Order over a year ago as representing the complete production by DuPont of all non-privileged, material documents

falling within any of the specified subject matter areas during the preceding 30-day supplementation period specified in the Order.  (*See* Bilott Aff., ¶ 5.)

Plaintiffs had no reason to question whether DuPont was actually producing all material, responsive information required under the Order until they first learned from other sources that DuPont had been engaging in certain communications with respect to PFOA risk assessment and health effects issues with federal and state regulatory entities that were not reflected in the supplemental documents produced by DuPont.  More specifically, Plaintiffs discovered that DuPont had been communicating with the State of North Carolina's Science Advisory Board since at least February of 2009, and that DuPont's chief in-house toxicologist and consultants had made at least one formal presentation to the Agency on the issue of what safety level should be set for PFOA in drinking water.  Nevertheless, DuPont had not produced any documents relating to such communications or presentations.  (*Id.* ¶ 6.)  Plaintiffs also discovered from other sources that DuPont had participated in at least two recent meetings with USEPA's headquarters' staff, again for the purpose of advocating DuPont's views on PFOA toxicity/health effects/risk assessment, yet all DuPont had produced to Plaintiffs was a letter thanking EPA for the first meeting in June 2009 and the final slides and agenda used during the second meeting (which spanned over two days in October 2009).  (*Id.* ¶ 8.)

In an e-mail to DuPont's counsel on November 17, 2009, Plaintiffs specifically identified the subject matter of the communications at issue, noted the lack of responsive documents in DuPont's supplemental productions, and specifically asked DuPont to confirm whether other documents[1] on those subjects even existed within DuPont's possession.  (*Id.* Ex. 3.)  Plaintiffs asked that question so they could determine whether the lack of any such documents in DuPont's supplemental productions was simply because no such documents existed, or because DuPont possessed such documents but was deeming them not "material."  (*See id.*)

Plaintiffs' counsel had to send follow-up emails on November 23, 2009, and December 1, 2009, to finally obtain any substantive response.  (*See id.* Exs. 4, 5.)  Unfortunately, the December 1, 2009, response from DuPont's counsel did not provide the necessary clarifications.  (*See id.* Ex. 6.)   DuPont's counsel claimed that the PFOA risk assessment materials presented to the North Carolina Science Advisory Board did not even fall within one of the subject matters specified for supplemental production in the Order (whether "material" or not), that DuPont had

---

[1] On November 16, 2009, DuPont finally produced the final North Carolina Science Advisory Board presentation slides, (*see* Bilott Aff. Ex. 2) from *9 months earlier* (February 2009), but only after Plaintiffs had learned of the communication from another source and had specifically demanded the production.  Even then, DuPont belatedly produced the documents only as a "compromise" and while insisting that it had no obligation to ever produce the documents under the Order. (*See id.* Ex. 11 at 1.)

produced all "material" information relating to its June 24, 2009, meeting with EPA, and that the final October 2009 EPA meeting slides that DuPont had produced encompassed everything "called for under the Court's Order and Rule 26(e)." (*See id.* Ex. 6.) DuPont failed to respond to the question of whether there were other documents relating to the June or October 2009 meetings that were being withheld as not "material." (*See id.*)

In a letter dated December 7, 2009, Plaintiffs' counsel noted that they interpreted DuPont's December 1, 2009, letter as indicating that there were, in fact, other responsive documents relating to the June and October 2009 EPA meetings within DuPont's possession, but that DuPont was withholding them as not "material." (*See id.* Ex. 7 at 3.) Plaintiffs, therefore, asked DuPont to either promptly produce all such previously-withheld, responsive documents or at least identify what they are so the parties could evaluate whether they were properly withheld as not "material." (*See id.* at 3-4.) Plaintiffs' counsel also noted their objection to DuPont's argument that its PFOA presentation materials to the North Carolina Science Advisory Board did not fall within the scope of the specific subject matters identified in the Order for supplemental production, as one of those categories specifically includes all documents relating to "any analysis or assessment of risk to human health or to any health effect or disease resulting from exposure to PFOA in drinking water." (*Id.* n. 1 (citing Order, at ¶ 1.n).) Plaintiffs

further emphasized that DuPont's interpretation of this paragraph of the Order requiring supplemental production of PFOA risk assessment communications as not requiring supplemental production of DuPont's PFOA risk assessment communications with regulators "raises serious questions" as to what DuPont thought the Order did require to be produced, and made Plaintiffs "now question what other meetings and presentations on PFOA risk/health issues have occurred that DuPont has not disclosed and that Plaintiffs, therefore, have not even known to ask about."  (*Id.* ns. 1 and 2.)  Plaintiffs, therefore, asked DuPont to produce all such responsive documents, as well.  (*See id.*)

Rather than respond to Plaintiffs' December 7, 2009, letter in writing or produce any of the requested information, DuPont's counsel proposed that the parties meet and confer on the matter, by telephone, on December 17, 2009. (Bilott Aff. Ex. 8.)  Unfortunately, when counsel for the parties met to confer on December 17, 2009, DuPont's counsel was still not in a position to respond to Plaintiffs' questions, first presented to DuPont over a month earlier, or to provide any of the information that Plaintiffs sought.  (*Id.* ¶ 16.)

For example, on the issue of whether DuPont actually had any other documents relating to its June and October 2009 meetings with EPA but was withholding those documents as not "material," DuPont's counsel indicated that they still needed to check on that point but wanted to know why Plaintiffs thought

such documents were "material."  (*Id.*)  Plaintiffs' counsel promptly explained that

they believed documents revealing who actually was seeking the meetings, who

was deciding the topics for discussion/the agenda, who decided who was invited,

who decided whether to allow public participation, etc. were material.  (*Id.* ¶ 17.)

After all, to the extent DuPont still intended to assert any defense that EPA is "not

concerned" by PFOA in water or "agrees" with DuPont's view of the science, or

has decided not to order clean water or take action, etc., any documents showing

that DuPont (or its industry colleagues[2]) used its lobbyists/consultants/employees

or other political power to pressure or mislead EPA into such actions/positions

would be important evidence for rebutting DuPont's claims and/or for

impeachment at trial.  Plaintiffs noted, however, that they would readily agree that

such documents were not "material," if DuPont was willing to stipulate, in writing,

that it would not refer to, cite, or rely on any such EPA statements, actions, or

inactions at trial or in any motion practice or other proceedings before the Court.

_____

[2] When DuPont's counsel qualified its responses on the EPA meeting issue with
references only to "DuPont's communications with" the agency, Plaintiffs' counsel
specifically noted that the Order does not limit DuPont's production obligations to
only those documents actually authored by or sent directly to DuPont but requires
production of all "communications" in DuPont's possession relating to such topics,
which necessarily includes any communications DuPont was copied on or
otherwise came into DuPont's possession.  (Bilott Aff. ¶ 18.)  On that point,
Plaintiffs' counsel specifically noted that, if DuPont's industry partner on PFOA
issues, the 3M Company, had handled direct communications with EPA but copied
DuPont or sent DuPont its communications, all of those documents would need to
be produced from DuPont's files.  (*Id.*)  DuPont's counsel did not respond on that
point.  (*Id.*)

(*Id.*)  When Plaintiffs' counsel asked DuPont's counsel whether the "materiality" issue was even relevant or whether no other responsive documents existed to potentially produce, DuPont's counsel stated only that they still would need to check on that.  (*Id.* ¶ 19.)  DuPont's counsel also was unable to answer Plaintiffs' inquiry as to why DuPont thought the communications at issue were not "material."  (*Id.*)

With respect to the failure to timely produce North Carolina Science Advisory Board presentation documents (and DuPont's December 1, 2009, claim that no such risk assessment communications with regulators even fall within the categories of documents for production under the Order), DuPont's counsel retreated during the December 17, 2009, call from DuPont's prior claim that the documents fell outside the scope of the production categories and argued that the documents were, nevertheless, not "material."  (*Id.* ¶ 20.)  Again, rather than provide the information Plaintiffs had requested as to whether DuPont also had not produced other communications with other regulators of which Plaintiffs were not aware, DuPont's counsel asked Plaintiffs to explain why they thought such communications were "material."  (*Id.*)  Plaintiffs' counsel noted that the very question was troubling, as this was a specific category of communications that the parties had agreed would be produced.  (*Id.*)  If DuPont thought communications with North Carolina regulators on PFOA risk assessment issues were not

"material," what communications did DuPont think were material within that category – any?  Nevertheless, Plaintiffs' counsel explained that such communications revealing DuPont's efforts to persuade/influence state or federal regulators to accept DuPont's view of the PFOA health and toxicity data and to set PFOA water safety limits along the lines advocated by DuPont (and its industry colleagues) are material for basically the same reasons Plaintiffs identified with respect to the EPA meetings (which is why Plaintiffs asked for supplementation in these areas in the first place).  (*Id.*)  Again, Plaintiffs' counsel told DuPont's counsel that Plaintiffs would be willing to concede that such communications are not "material," if DuPont stipulated, in writing, that it would not refer to, cite, or rely upon any statements or actions by any state or federal regulators with respect to such PFOA risk/heath/safety issues at trial, in motion practice, or any other proceeding before the Court in this case.  (*Id.*)  As with the EPA meeting communications, Plaintiffs' counsel specifically asked DuPont's counsel to confirm whether any such communications with any other state or federal agencies had occurred that DuPont had withheld as not "material."[3]  (*Id.*)  Again, DuPont's

---

[3] Plaintiffs noted that, in DuPont's December 15, 2009, supplemental production, DuPont had produced a copy of an October 21, 2009, email from DuPont's Global Business Manager for Fluoroproducts, David Boothe, to the EPA thanking the EPA for the October 2009 meeting, (*see* Bilott Aff. Ex. 9), thus DuPont clearly was not claiming that such "routine" correspondence between DuPont and the Agency setting up the meeting was either non-responsive or not material.  (*See id.* ¶ 21.)

counsel did not answer that question and stated only that they would have to check. (*Id.*)

Thus, at the end of the December 17, 2009, meet and confer, both of the original questions Plaintiffs had first asked a month earlier still remained unanswered: 1) Did DuPont possess other documents relating to the June and October 2009 meeting with EPA (including any authored by 3M or industry colleagues that DuPont also received) that it was withholding as not "material"?; and 2) Did DuPont possess other documents relating to communications with other state or federal regulators relating to PFOA risk assessment/water safety/health issues that it was withholding as not "material"? (*See* Bilott Aff. Ex. 10.) Based on the meet and confer, it was Plaintiffs' understanding that DuPont now understood the scope of Plaintiffs' questions and would be taking those steps necessary to finally answer the questions, including an explanation of any assertion by DuPont that the documents and information at issue were not "material." (*See id.* ¶ 23.)

Plaintiffs eventually received DuPont's responses in a letter dated December 22, 2009. (*Id.* Ex. 11.) As for communications with state and federal regulators on risk issues, DuPont refused to identify whether such communications had occurred with entities other than those DuPont already had revealed, stating that such a request "is beyond the requirements of Rule 26(e)." (*Id.* at 2.) With respect to the

North Carolina Science Advisory Board communications in particular, DuPont

basically asserted that the communications were not "material," because they

repeated and reasserted DuPont's long-held views of the PFOA literature and risk

assessment approach and, because the underlying studies and raw data had already

been made available to Plaintiffs, the new presentations and communications

"contain[] no new information."  (*Id.* at 1.)  In other words, DuPont made clear that

it believes that none of its newly-generated communications and presentations to

regulators (or presumably, to others) on PFOA risk/health issues can ever be

"material" or subject to production, if they repeat or are based on the same

underlying raw data that already has been produced.

As for the June and October 2009 meetings with EPA, DuPont said nothing

in its December 22, 2009, letter about whether additional documents exist relating

to the June meeting or whether they were being withheld as not "material."  (*See

id.*)  As for the October 2009 meeting, DuPont's counsel affirmatively represented

to Plaintiffs that "DuPont has reviewed its files and determined that *no previously

unproduced documents exist in its files* regarding communications with U.S. EPA

about the October 2009 meeting."  (*Id.* (emphasis added).)  As Plaintiffs had

specifically asked about such communications that may have been authored by 3M

or other industry colleagues but copied to DuPont, and DuPont had been producing

documents from DuPont employee David Boothe's files since the inception of this

litigation, including some documents with its December 15, 2009, supplemental production, Plaintiffs understood DuPont's counsel to be affirmatively representing that no documents (whether "material" or not) exist within DuPont's files (including David Boothe's) relating to the October 2009 EPA meeting that DuPont had not already produced to Plaintiffs in this case.

Plaintiffs were prepared to reasonably rely upon DuPont's express, unequivocal representation that, rather than there being some set of undisclosed, responsive documents that DuPont was withholding as not "material," there simply were no other documents (material or not) relating to the October 2009 meetings with EPA, until January 8, 2010.  On that date, Plaintiffs' counsel received from EPA documents responsive to their Freedom of Information Act request seeking all documents in EPA's files relating to the same industry/EPA meetings Plaintiffs had been discussing with DuPont.  (*Id.* ¶ 26.)  Those documents from EPA's files included emails and other documents sent from or to DuPont (specifically, to or from DuPont's employee, David Boothe), that were not produced to Plaintiffs by DuPont.  (*See id.* Ex. 12 (copies of selected documents Plaintiffs' counsel received from EPA on Jan. 8, 2010).)  EPA's documents confirmed that, although an attempt apparently was made to try to funnel the bulk of the communications with EPA through 3M, copies of the communications clearly were sent to (at least) David Boothe at DuPont while this litigation was

pending, and should clearly be within his files. (*See id.*) Yet, Plaintiffs have double-checked DuPont's supplemental productions and have confirmed that DuPont did not produce any of the documents attached at Ex. 12. (*Id.* ¶ 28.)

After these numerous attempts at conferring with DuPont failed to result in DuPont either producing the documents in question or providing an explanation for their absence, Plaintiffs were forced to bring this dispute to the attention of the Court. Pursuant to Local Rule 37.1(a)(1) Plaintiffs wrote a letter to the Court describing the discovery dispute on January 13, 2010. (*See id.* Ex. 13). DuPont did not submit any response to Plaintiffs' January 13, 2010, letter or make any effort to contact Plaintiffs to discuss any aspect of the issues raised in the letter. (*See id.* ¶ 30.)

On January 15, 2010, Plaintiffs discovered from other sources that three DuPont employees may have been selected to serve on the New Jersey Department of Environmental Protection ("NJDEP")'s new "Science Advisory Board." (*See* Bilott Aff. Ex. 14).[4] Although DuPont had produced some limited documentation indicating that several of its employees may have been nominated for the Board, DuPont had not produced any documentation revealing which employees were involved or whether the employees were involved with PFOA in any way. (*See id.*

---

[4] Also available at http://www.wolfenotes.com/2010/01/today-dep-appoints-new-science-board-stacked-with-nj%E2%80%99s-largest-polluting-industry-representatives/.

¶ 33.)  Thus, when it was revealed by the outside source that the nominated/appointed DuPont employees may have included Gerry Kennedy, who has served as an expert for DuPont for years in litigation on PFOA toxicology issues,[5] Plaintiffs promptly asked DuPont for production of all documents relating to these nominations.  (*Id.* Ex. 16.)  As of today's date, DuPont has not provided any written response to Plaintiffs' request nor provided the documentation surrounding these nominations to Plaintiffs.  (*See id.* ¶ 33.)

The Court conducted a conference with the parties to discuss these issues on January 27, 2010.  Although the Court provided the parties yet another opportunity to try to resolve this matter extrajudicially before the formal conference began, no progress was made toward resolving the matter during that additional teleconference among the parties.  (*See id.* ¶ 38.)

Once the formal conference with the Court began, DuPont was offered ample opportunity to explain its position, but provided only oblique references to an apparent problem with its "indexing system."  (*See id.* ¶ 39.)  During the conference DuPont did confirm an apparent dispute among the parties as to the scope of the Court's discovery Order, but did not articulate DuPont's position, stating only that it would address the issue further if and when a formal motion is filed.  (*See id.* ¶ 40.)  After the Court then granted Plaintiffs leave to proceed with

---

[5] *See* Bilott Aff. Ex. 15 (DuPont's expert disclosures in *Leach*).

the filing of this Motion, Plaintiffs again expressed a willingness to confer further with DuPont to attempt to resolve the issue, if DuPont was willing to do so.  (*See id.* ¶ 41.)  As of today's date, however, Plaintiffs have heard nothing further from DuPont on any of these issues.  (*Id.*)

## II.   ARGUMENT

Under Federal Rule of Civil Procedure 37(a), a party may move for an order compelling discovery after engaging in a good faith effort to obtain the discovery without court action.  Fed. R. Civ. P. 37(a).  Local Rule 37.1 also requires the parties to confer to resolve any discovery dispute before filing a formal motion. Plaintiffs have engaged in a good faith effort to resolve this discovery dispute and have conferred with DuPont, but despite Plaintiffs' best efforts, DuPont has failed to answer Plaintiffs inquiries clearly or to provide the documents requested. Accordingly, Plaintiffs seek sanctions pursuant to Rules 37(b) and (c). Alternatively, Plaintiffs seek an order compelling DuPont to produce the documents pursuant to Rule 37(a).

### A. Plaintiffs Have Engaged in a Good Faith Effort to Resolve this Dispute.

Plaintiffs have engaged in a good faith effort to resolve this dispute without involving the Court.  Plaintiffs contacted DuPont numerous times in an attempt to resolve this issue, and engaged in two separate teleconferences to try to resolve the dispute.

Plaintiffs contacted DuPont on November 17, 2009, November 23, 2009, and December 1, 2009, in an initial attempt to obtain the requested documents, or at least an explanation for their absence, from DuPont.  Plaintiffs made their inquiry clear:

> Plaintiffs request that DuPont either confirm that no such documents of any kind exist within its possession or the possession of its consultants/agents/counsel…or explain why DuPont believes that any such documents that do exist (but have not been produced) are somehow not within the scope of production required under the Court's December 18, 2008 Order in this case.

(Bilott Aff. Ex. 3).

Finally, on December 1, 2009, DuPont responded, but failed to either produce the documents in question or even explain if they existed, and if so, the reasons for withholding them.  Plaintiffs should not be forced to cull inferences from DuPont's correspondence to understand the body of documentation in DuPont's possession.

Plaintiffs again wrote to DuPont on December 7, 2009, again attempting to ascertain if such documents existed, and if they did, if DuPont had determined them to be immaterial.   Finally, a month after Plaintiffs' initial inquiry, the parties engaged in a meet and confer on December 17, 2009.  Once again, however, DuPont was unprepared to answer Plaintiffs' questions.  DuPont could only state that it would consider Plaintiffs' position and would get back to the Plaintiffs. DuPont sent Plaintiffs a letter on December 22, 2009 that failed to answer

17

Plaintiffs' questions or clarify DuPont's position.  Finally, DuPont failed to explain the lack of document production during the additional teleconference among the parties on January 27, 2010, or during the conference with the Court that immediately followed on the same day.  Despite Plaintiffs' good faith effort to resolve this dispute, Plaintiffs have been unable to secure the documents or a satisfactory explanation from DuPont.  Plaintiffs' attempts to discover this information from DuPont have been met with resistance and obfuscation.

### B. Despite Plaintiffs' Attempts to Resolve this Dispute, DuPont Has Not Produced the Documents.

Despite Plaintiffs' good faith efforts to resolve this dispute, DuPont has failed to either produce the documents, or to explain why they have not been produced.  Communications with USEPA, the NJDEP, the North Carolina Science Advisory Board, or any other state, federal, or local governmental entity relating to DuPont's efforts to persuade any of those entities of its view of PFOA risk assessment, health effects, or medical monitoring issues are material communications that should be produced under the Court's Order and Rule 26(e).  Despite this, DuPont has engaged in at least three comprehensive meetings with federal and state regulators, but produced only a handful of related documents to the Plaintiffs.  Plaintiffs find it difficult to believe that these meetings occurred with so many parties involved, including DuPont, federal and state regulators, experts, and other industry representatives, without generating additional

documentation such as communications proposing and organizing the meetings and the content of presentations and determining invitees, presenters, and agendas, for example.  The recent Freedom of Information Act response from USEPA confirms that such documents do exist and at least some of them should be within DuPont's files.

In response to Plaintiffs' inquiries into a presentation DuPont made to the North Carolina Science Advisory Board on PFOA, DuPont is apparently now contending that documents from that presentation are immaterial.  DuPont explains that the "presentation contains only information that has been previously produced to Plaintiffs or is publicly available, including excerpts from the EPA's website and summaries of studies that Plaintiffs have had for months, if not years."  (Bilott Aff. Ex. 11, at 1.)  Yet this is not the test for materiality.  Information is material if it is "of such a nature that knowledge of the item would affect a person's decision-making; significant; essential."  *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 264 (3rd Cir. 2008) (citing Black's Law Dictionary 998 (8th ed, 2004)); *see also Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 107 (3rd Cir. 2009) (same).  DuPont's presentation on the risks of PFOA is relevant and material to this litigation.  Such a presentation falls directly within a category that the parties expressly *agreed* would be designated by the Court for supplementation: "[d]ocuments that relate or refer to any analysis or assessment of

risk to human health or to any health effects or disease resulting from exposure to PFOA in drinking water." (Order at 1.n). Regardless of whether some of the data or studies referred to in the presentation were already known to or made available to Plaintiffs, the very fact that this information was presented by DuPont to North Carolina regulators at all, who presented it, and when, is (as indicated above) material, relevant information (including for bias/impeachment), particularly to the extent DuPont may try to refer to any decision or action taken by regulators in that State that resulted from this same advocacy by DuPont.

Moreover, in preparation for the October 2009 meeting with USEPA, David Boothe, DuPont's employee, sent a letter dated July 22, 2009 to Suzanne Rudzinski, Director of USEPA's Office of Science and Technology for the Office of Water, specifically citing North Carolina's interim maximum concentration level for PFOA in drinking water as representative of a level that DuPont believes is protective for long-term or lifetime exposure to humans and contrasted that level with New Jersey's health guidance level, which is significantly lower. (Bilott Aff. Ex. 23). Thus, DuPont cannot credibly argue that its meetings and presentations relating to PFOA with North Carolina or USEPA officials or those with any other regulators are not relevant and material to the claims in these cases.

With respect to the June and October 2009 meetings with EPA, DuPont said nothing in its December 22, 2009 letter about whether additional documents exist

relating to the June meeting, or whether they are being withheld as not material. (*See* Bilott Aff. Ex. 11).  As for the October 2009 meeting, DuPont's counsel affirmatively represented to Plaintiffs that "DuPont has reviewed its files and determined that *no previously unproduced documents exist in its files* regarding communication with U.S. EPA about the October 2009 meeting."  (*Id.*, emphasis added).  However, as Plaintiffs learned through the EPA's January 8, 2010 Freedom of Information Act response, this statement is simply not accurate.  (*See* Bilott Aff. Ex. 12.)  EPA's documents confirmed that responsive communications were clearly sent to DuPont while this litigation was pending, and should be within DuPont's files.  (*See id.*)  Yet, DuPont did not produce those documents and affirmatively disclaimed their very existence.

The fact that DuPont represented to Plaintiffs on December 22, 2009 that "DuPont has reviewed its files and determined that no previously unproduced documents exist in its files regarding communications with U.S. EPA about the October 2009 meeting" confirms that, either DuPont's representation is not true or the documents no longer "exist" because they have been destroyed.  Either scenario is unacceptable.  The documents should exist within DuPont employee David Boothe's files, as he is clearly shown as either authoring or receiving the documents at issue.  (*See id.*).  Moreover, the documents at issue were all generated while this litigation was pending and after the Court's Order requiring

supplemental production was issued.  Thus, any action by DuPont that resulted in
the documents no longer existing would be spoliation of evidence.  *See Pension
Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, ___ F.R.D. ___,
2010 WL 184312 at *4 (S.D.N.Y. January 15, 2010) (attached to Bilott Aff. Ex.
21) ("The common law duty to preserve evidence relevant to litigation is well
recognized.  The case law makes crystal clear that the breach of the duty to
preserve, and the resulting spoliation of evidence, may result in the imposition of
sanctions by a court…") (citations omitted).

Plaintiffs no longer believe that they can rely on DuPont's representations
that it has timely produced all responsive and material documents required under
the Order or that it will do so in the future.  At this point, Plaintiffs are unaware of
how many such presentations and meetings DuPont has held with federal, state,
and local regulators regarding PFOA.  DuPont flatly refused to answer Plaintiffs'
request for clarification as to whether DuPont had held other meetings with state or
federal regulators concerning PFOA-related issues that were not previously
disclosed to Plaintiffs.  At this point, it is not clear whether other responsive
documents exist but have not been produced because of some test for "materiality"
that DuPont has still not explained.  Despite Plaintiffs' requests, DuPont has
refused to identify what criteria it is using to determine such materiality.  DuPont
also has not responded to Plaintiffs' most recent request for production of all

responsive documents relating to the potential appointment of possibly three

current DuPont employees to the New Jersey Science Advisory Board.[6]

### C. DuPont Should be Sanctioned for Failure to Supplement Discovery Responses and Failure to Comply with the Court's Order.

DuPont's actions warrant sanctions under Rule 37, which authorizes the

court to sanction a party for discovery abuse.  *See, e.g., Wachtel v. Health Net,*

*Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006).  The purpose of Rule 37 is to: "(1) penalize

the culpable party or attorney; (2) deter others from engaging in similar conduct;

(3) compensate the court and other parties for the expense caused by the abusive

---

[6] During the January 27, 2010, hearing before the Court, DuPont's counsel indicated that there may be some additional documentation in DuPont's files on this issue but that such documents likely would not be due for production until DuPont's February 15, 2010 production.  (Bilott Aff. ¶ 42.)  Plaintiffs find this claim puzzling as the nomination forms apparently were all due by August 2009.  (*Id*. Ex. 17.)  To be nominated to the Science Advisory Board, the nominee or nominator had to fill out a nomination form and submit a biographical sketch and a CV or resume via email to the NJDEP by August 7, 2009.  NJDEP Science Advisory Board Nomination Form (attached to Bilott Aff. Ex. 17).  Furthermore, as part of the nomination process, "a candidate must complete a conflicts of interest survey…that, among other things, discloses any financial or other personal interest the candidate may have in the subject matter that will be considered by the Board, committee, or subcommittee."  Administrative Order No. 2009-05, 16 (New Jersey Dep't Envtl. Prot. May 28, 2009) (attached to Bilott Aff. Ex. 18).  Thus, the nomination of DuPont scientists and/or employees would necessarily include express disclosures of those persons' interests in this pending PFOA-related litigation and DuPont's financial interest in the regulation of PFOA generally.  Plaintiffs specifically asked DuPont for these documents upon learning of them on January 15, 2010.  (Bilott Aff. Exs. 14, 16.)  Despite the Court's supplemental discovery Order and Plaintiffs' explicit request for these documents, DuPont has failed to produce the documents from this nomination process, documents DuPont must have had since at least August 7, 2009, when the nomination process closed.

conduct; and (4) compel discovery and disclosure." *Id.* Pursuant to Rule 37(b) DuPont should be sanctioned for failing to comply with the Court's December 18, 2008 Discovery Order, and pursuant to Rule 37(c) DuPont should be sanctioned for failing to supplement discovery under Rule 26(e). *See* Fed. R. Civ. P. 37(b) and (c). Sanctions are appropriate to penalize DuPont for its ongoing discovery abuse, to deter DuPont and others from engaging in further discovery abuse, to compensate the Court and Plaintiffs for the time and expenses incurred by DuPont's conduct, and to compel DuPont to produce the documents in question. *See Wachtel*, 239 F.R.D. at 99.

Rule 37(b) provides that where a party "fails to obey an order to provide or permit discovery" the court may sanction that party through various means. Fed. R. Civ. P. 37(b). Rule 37(c) provides that: "[i]f a party fails to provide information…as required by Rule 26…(e), the party is not allowed to use that information…to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Furthermore, the court "(A) may order payment of the reasonable expenses, including attorney's fees, caused by this failure; (B) may inform the jury of the party's failure, and (C) may impose other appropriate sanctions…". *Id.* Rule 37 provides the Court with leeway "to impose other appropriate sanctions in response to … discovery abuse, including payment of reasonable expenses caused by the

abuse and any of the actions authorized under Rule 37(b)(2)(A), (B) and (C)."
*Wachtel*, 239 F.R.D. at 100; *see also Grant v. Omni Health Care Systems of NJ, Inc.*, 2009 WL 3151322, *12 (D.N.J. 2009) (attached to Bilott Aff. Ex. 19) ("The Federal Rules of Civil Procedure permit the imposition of many different types of sanctions based on a variety of discovery misconduct.").

### 1. DuPont should be precluded from referencing or submitting the withheld evidence.

Due to DuPont's disregard for the Court's Order and the rules of discovery, precluding DuPont from referencing or submitting the evidence in question is an appropriate sanction. *See* Fed. R. Civ. P. 37(b)(2) and 37(c)(1). Preclusion of evidence is warranted where a party fails to comply with discovery requests and orders. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 219 (3rd Cir. 2003) (affirming preclusion of evidence and subsequent dismissal of claim as a result of "repeated noncompliance with discovery requests and orders"); *see also Access 4 All, Inc. v. Ani Assoc., Inc.*, 2007 WL 178239, *4 (D.N.J. 2007) (attached to Bilott Aff. Ex. 20) ("This Court's preclusion order is within the discretion afforded this Court to impose appropriate sanctions, and is supported by ample precedent in this District of cases that preclude a delinquent party from submitting withheld evidence that was not produced in response to a discovery Order.")(collecting cases).

In deciding whether to exclude evidence the court weighs the following factors: "(1) the prejudice or surprise to Plaintiffs; (2) the ability of Plaintiffs to

cure that prejudice; (3) the extent to which the evidence would disrupt the orderly and efficient trial of the case…and (4) bad faith or willfulness of Defendants in failing to comply with the court's order." *Wachtel*, 239 F.R.D. at 105.  Weighing each of these factors tips the scales in favor of precluding DuPont from using the evidence it has kept from Plaintiffs.  First, Plaintiffs were greatly surprised to learn, from other sources, of DuPont's meetings with government agencies and applications to the NJDEP Science Advisory Board, particularly where DuPont "had numerous opportunities during that time to notify the Plaintiffs." *See id.* Despite ample opportunity to notify Plaintiffs through monthly supplemental discovery, Plaintiffs only learned of the evidence in question from other sources entirely.

Plaintiffs are clearly prejudiced from DuPont's lack of production. "Prejudice need not be irremediable…and may include the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy and the burden a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary." *Id.* (citing *Ware*, 322 F.3d at 222-23). Plaintiffs cannot effectively prepare for trial in this case while DuPont engages in secret, back-door meetings with government entities to try to persuade those entities to take actions that DuPont then refers to or otherwise tries to use in its defense to the claims in this case.  Plaintiffs are certainly prejudiced from not

knowing of DuPont's behind-the-scenes attempts at influencing government entities to side with DuPont's view of PFOA in the midst of this litigation.  If Plaintiffs are not made aware that these communications are even occurring, there is no way for Plaintiffs to try to participate in or gain access to these same activities.  This is precisely the reason why Plaintiffs sought the Court's supplemental discovery Order in the first place, which expressly requires production of such communications documents every month.  Additionally, Plaintiffs are prejudiced by having to devote significant time and resources to hunting down evidence DuPont should have produced to Plaintiffs.  "It is clear that Defendant's delinquency has prejudiced Plaintiffs' 'ability to prepare effectively a full and complete trial strategy.'"  *Access 4 All,* 2007 WL 178239 at *4 (citing *Ware*, 322 F.3d at 222).  Furthermore, "[t]he need for Plaintiffs to chase Defendant for basic information has also caused significant delays in the resolution of this case and has forced Plaintiffs to needlessly expend resources."  *Id.*  Plaintiffs cannot know the extent of that prejudice nor readily attempt to cure that prejudice without knowing the extent of information DuPont has kept from Plaintiffs. Finally, under the last *Wachtel* factor, DuPont's willful failure to comply with the Court's explicit discovery Order warrants sanctions in the form of preclusion of the evidence.  *See, e.g.*, *Access 4 All,* 2007 WL 178239 at *4 (precluding evidence not produced in response to a discovery order, explaining: "[t]he Court already decided

27

the requested information is relevant and defense counsel clearly does not have the power to 'veto' a court Order.")

Plaintiffs respectfully request an Order barring DuPont from referring to, citing, or relying on at trial, in any motion practice, or any other proceeding in this case, any actions, statements, or activities by any federal, state, or local government entity relating to PFOA.  If DuPont is going to take the position that its communications on such issues are either not sufficiently relevant or material to warrant prompt and complete production of all related documents to Plaintiffs, as required under the Order and Rule 26(e), then prohibiting DuPont from using those same issues in its defense is the appropriate sanction.  *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 823 (3rd Cir. 1982) ("the sanction imposed was appropriate: the evidence excluded bears a direct relation to the evidence sought under the discovery order.") (citations omitted).

## 2.  In the alternative, DuPont should be compelled to produce the withheld evidence.

If the Court does not exclude the evidence as a sanction on DuPont, Plaintiffs respectfully request an Order compelling DuPont to: 1) produce all responsive documents required under the Order within 10 days and certify to the Court that it has done so; 2) identify all non-privileged documents falling within paragraphs 1(a), (b), (i), (j), (l), (m), and (n) of the Order that DuPont has withheld as not material, and provide an explanation of DuPont's criteria for determining

materiality; and 3) provide a written explanation to the Court why DuPont claims

the documents attached hereto at Exhibit 12 do not exist in its files, clarifying

exactly what happened to each of those documents.

### 3. DuPont should be ordered to pay Plaintiffs' expenses incurred in this discovery dispute.

Plaintiffs respectfully request that DuPont be required to pay the costs and

fees Plaintiffs were forced to incur in this discovery dispute.  Pursuant to Rule

37(a)(5), where a party makes a Motion for an order compelling discovery, and the

motion is granted, "the court must…require the party…whose conduct necessitated

the motion…to pay the movant's reasonable expenses incurred in making the

motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  Rule 37 provides

for the same sanctions where a party violates a discovery order or fails to

supplement discovery.  Fed. R. Civ. P. 37(b)(2)(C) and 37(c)(1)(A); *see also*

*Access 4 All, Inc.*, 2007 WL 178239, *5 (ordering defendant to pay plaintiffs'

reasonable costs and fees associated with defendant's failure to obey discovery

order); *Wachtel*, 239 F.R.D. at 110-11 (same).  If the Court grant's Plaintiffs

Motion to Compel and/or determines that DuPont has violated the Court's Order or

failed to supplement its discovery responses under Rule 26(e), then DuPont must

pay Plaintiffs' expenses incurred in making this Motion.  *See* Fed. R. Civ. P. 37(a),

(b), and (c).  DuPont has not and cannot show that its failure to produce the

discovery in question is "substantially justified," the standard DuPont must

demonstrate to excuse payment to Plaintiffs.  *See e.g.,* Fed. R. Civ. P.

37(a)(5)(A)(ii).  DuPont cannot justify its nondisclosure and failure to obey the

Court's Order, and should be ordered to pay Plaintiffs expenses incurred in making

this Motion.

### III.  Conclusion

For the above-stated reasons, Plaintiffs' Motion for Sanctions and to Compel

Production of Documents should be granted, appropriate sanctions imposed on

DuPont, and expenses awarded to Plaintiffs.

Respectfully submitted,

s/ Shari M. Blecher

David B. Byrne, III
Beasley, Allen, Crow, Methvin, Portis
    & Miles, P.C
P.O. Box 4160
Montgomery, Alabama  36103
(334) 269-2343

Shari M. Blecher, Esq.
Stuart J. Lieberman, Esq.
LIEBERMAN & BLECHER, P.C.
30 Jefferson Plaza
Princeton, New Jersey 08540
(732) 355-1311

Robert A. Bilott
Taft Stettinius & Hollister, LLP
 425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838

R. Edison Hill
Hill, Peterson, Carper, Bee
& Deitzler, P.L.L.C.
Northgate Business Park
500 Tracy Way
Charleston, West Virginia 25311
(304) 345-5667

J. Steven Justice
Taft Stettinius & Hollister, LLP
110 North Main Street, Suite 900
Dayton, Ohio 45402-1786
937) 228-2838

Larry A. Winter
Winter Johnson & Hill, PLLC
Post Office Box 2187
Charleston, West Virginia 25328
(304) 345-7800

*Attorneys for Plaintiffs*