[Rowe Doc. Nos. 317, 318, 328]
[Scott Doc. Nos. 272, 273, 283]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

RICHARD A. ROWE, et al.,

       Plaintiffs,           Civil No. 06-1810 (RMB/AMD)

   v.

E.I. DU PONT DE NEMOURS AND
COMPANY,

       Defendant.

_____

MISTY SCOTT, on behalf of
herself and all others
similarly situated,

       Plaintiff,

    v.              Civil No. 06-3080 (RMB/AMD)

E.I. DU PONT DE NEMOURS AND
COMPANY,

       Defendant.       **MEMORANDUM OPINION
AND ORDER**

Presently before the Court are a number of motions by Plaintiffs in the above-captioned matters. Specifically, Plaintiffs request an extension of the merits-related expert disclosure deadline for non-medical monitoring experts so that Plaintiffs may rely on their expert reports and disclosures for medical monitoring claims in further support of their non-medical monitoring claims. Plaintiffs also seek leave to amend the second

amended complaint and to strike Defendant's brief in opposition to
Plaintiffs' motions to amend the complaints.   The Court has
considered the submissions of the parties, as well as the arguments
of counsel,[1] and for the reasons that follow, Rowe Plaintiffs' and
Scott Plaintiff's motions for an extension of time and for leave to
amend the second amended complaint are granted, and their motion to
strike Defendant's brief in opposition to Plaintiffs' motions to
amend is denied.

The facts of both the Rowe and Scott cases were set forth in
the District Court's Opinion dated December 23, 2008, and the Court
shall therefore set forth herein only those facts relevant to the
present motions.   By Order dated December 12, 2008, the Court
extended the deadline for submission of all merits-related expert
reports and disclosures pursuant to FED. R. CIV. P. 26(a)(2) on
behalf of Rowe and Scott Plaintiffs to "thirty (30) days after the
filing of the decision by the District Court on the pending motions
for class certification." (Order 2, Dec. 12, 2008.)   On December
23, 2008, the District Court entered an Opinion and Order denying
without prejudice the motions of Rowe Plaintiffs and Scott

---

1. The Court held oral argument on the motion for an extension of
time by telephone on August 17, 2009, and oral argument on the
motions for leave to amend on September 16, 2009, and reserved
decision on both motions.  The Court held an in-person status
conference on November 13, 2009, at which time the Court
permitted additional submissions with respect to the motions to
amend as set forth on the record.

Plaintiff for class certification, and permitted Plaintiffs in both actions to "seek leave of the Court to file a motion for class certification (with respect to their claims based on negligence, nuisance, trespass, battery, strict liability, and the New Jersey Environmental Rights Act) out of time," and to file within thirty days "a brief submission . . . identifying the precise issues relevant to medical monitoring that they believe are appropriate for class treatment, consistent with the Court's Opinion" of December 23, 2008.  (Order 2, Dec. 23, 2008.)

In light of the District Court's Order permitting additional briefing on class certification issues, Rowe Plaintiffs filed a motion seeking clarification of this Court's December 12, 2008 Order requiring merits-related expert reports and disclosures to be submitted within thirty days of the District Court's decision on the class certification motion.  Rowe Plaintiffs alternatively sought an extension of time to file the merits-related expert reports and disclosures.  Scott Plaintiff joined in Rowe Plaintiffs' motion.  By Order dated March 6, 2009, the Court granted Plaintiffs' request for an extension of time.  Rowe Plaintiffs were directed to serve merits-related expert reports and disclosures with regard to medical monitoring-related claims within thirty days of the filing of the District Court's decision on the supplemental briefs on class certification issues, and Scott

3

Plaintiff was directed to serve such discovery within sixty days or by no later than April 20, 2009.   (Order 2, Mar. 6, 2009.) Plaintiffs in both Rowe and Scott were also directed to serve all other merits-related expert reports and disclosures by no later than April 20, 2009.   (Id.)   On April 10, 2009, Scott Plaintiff filed a motion [Doc. No. 255 in No. Civ. A. 06-3080] to further extend the time to submit her merits-related expert reports and disclosures on medical monitoring issues, such that Rowe Plaintiffs' and Scott Plaintiff's reports would be due on the same date.   The parties consented to such extension, and the Court entered an Order directing Plaintiff Scott to submit all merits-related expert reports and disclosures on medical monitoring issues within thirty days of the filing of the District Court's decision on the supplemental briefs on medical monitoring class certification issues.  (Order 3, July 2, 2009.)[2]

In addition to seeking an extension of time for Scott Plaintiff to submit her merits-related expert reports and disclosures on medical monitoring issues, Plaintiffs also requested in the motion filed on April 10, 2009 clarification as to "whether the merits-related expert reports and disclosures concerning

---

2.   The District Court issued an Opinion and Order in connection with the supplemental briefs on July 29, 2009, and Plaintiffs' merits-related expert reports and disclosures on medical monitoring issues were filed on August 28, 2009.

medical monitoring issues can also be used in further support of Plaintiffs' non-medical monitoring claims." (Pls.' Mem. in Supp. of Mot. for Extension of Deadlines for Submission of <u>Scott</u> Pl.'s Medical Monitoring Experts Disclosures until after a Ruling on <u>Rowe</u> Pls.' Mot. for Class Certification has been Made [Doc. No. 255-2 in No. Civ. A. 06-3080], at 6.) The Court denied this request, without prejudice to Plaintiffs' right to bring a motion to extend the time to serve expert reports "to the extent [Plaintiffs] wish[] to utilize the medical monitoring report for the other claims." (Order 3, July 2, 2009; Transcript of Hearing on June 30, 2009, at 45:4-8.)

As previously noted, Plaintiffs have now filed a motion seeking an extension of the merits-related expert disclosure deadline for non-medical monitoring experts. Plaintiffs assert that although they served all of their non-medical monitoring expert reports prior to the court-ordered deadline of April 20, 2009, the expert reports and disclosures on medical monitoring issues, which were served on August 28, 2009, purportedly also contain "key, merits-related information" that is allegedly "necessary proof" for Plaintiffs' non-medical monitoring claims. (Pls.' Mem. in Supp. of Mot. for Extension of Deadlines for Submission of <u>Rowe</u> Pls.' and Pl. Scott's Non-Medical Monitoring Experts Disclosures for the Limited Purpose of Relying on the

5

Medical Monitoring Experts Disclosures in Further Supp. of their Non-Medical Monitoring Claims [Doc. No. 317-2 in No. Civ. A. 06-1810; Doc. No. 272-2 in No. Civ. A. 06-3080] (hereinafter, "Pls. Br.") 3, 5.)  Thus, Plaintiffs seek to utilize their expert reports and disclosures on medical monitoring issues in further support of their non-medical monitoring claims, even though such expert reports and disclosures were not served prior to the court-ordered April 20, 2009 deadline. (Id. at 4.)  Plaintiffs specifically note that they are not seeking to submit additional non-medical monitoring expert disclosures and reports, and that they only seek to utilize their medical monitoring reports and disclosures in connection with their non-medical monitoring claims to the extent there are "overlapping elements of proof." (Pls.' Reply Mem. in Further Supp. of Mot. for Extension of Deadlines for Submission of Rowe Pls.' and Pl. Scott's Non-Medical Monitoring Expert Disclosures for the Limited Purpose of Relying on the Medical Monitoring Experts Disclosures in Further Supp. of their Non-Medical Monitoring Claims [Doc. No. 323 in No. Civ. A. 06-1810; Doc. No. 278 in No. Civ. A. 06-3080] (hereinafter, "Pls. Reply Br.") 4, 5.)

In support of the motion for an extension of time, Plaintiffs argue that the factors set forth in Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on

other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir.
1985), aff'd, 482 U.S. 656, 107 S. Ct. 2617, 96 L. Ed. 2d 572
(1987), weigh in favor of granting the requested extension. (Pls.
Br. 5-6.) Specifically, Plaintiffs contend that if the extension
is not granted and they are not permitted to rely on their medical
monitoring related expert reports and disclosures to support their
non-medical monitoring claims, their "non-medical monitoring causes
of action could be jeopardized." (Id. at 6.) Plaintiffs cite as
an example their nuisance claims, which they assert involve "proof
of an unreasonable interference with the use or enjoyment of one's
property or with a public right, such as the right to clean
drinking water." (Id.) Plaintiffs' medical monitoring experts
allegedly will state that the PFOA released from du Pont's Chambers
Works Plant and allegedly contaminated Plaintiffs' drinking water
"can enter their bodies and contaminate their blood when they drink
the water and can result in their facing an increased risk of
certain latent diseases." (Id.) Such evidence is purportedly
"important" to establishing that the alleged PFOA contamination of
Plaintiffs' drinking water "poses an *unreasonable* interference with
the use and enjoyment of their property and with their public right
to clean drinking water." (Id.) (emphasis in original). Further,
Plaintiffs contend that the requested extension will not extend the
"overall" expert disclosure deadlines. (Id. at 7.) Moreover,

Plaintiffs assert that Defendant would not be prejudiced by the requested extension because Defendant will have forty-five days to respond to Plaintiffs' expert reports and disclosures, and because Defendant, prior to submission of its expert reports on non-medical monitoring issues in the present cases, was served in a matter filed in the United States District Court for the District of West Virginia captioned <u>Rhodes v. E.I. du Pont de Nemours and Company</u>, Civil Action No. 6:06-0530, with reports on medical monitoring issues from the same experts who are being utilized in the present cases. (<u>Id.</u> at 7; Pls. Reply Br. 6-8.)[3] Plaintiffs represent that they are not acting in bad faith or willfully, because they believe that use of the medical monitoring expert disclosures in support of their non-medical monitoring claims would not "be at odds" with the Court's orders. (Pls. Br. 7.) Plaintiffs also note that they raised the issue to the Court on April 10, 2009, before the deadline for submission of their non-medical monitoring expert reports and disclosures. (<u>Id.</u> at 8.)

---

3.   The Court notes that Plaintiffs, in their reply brief, identify two experts utilized in both the present matters and the <u>Rhodes</u> matter, Dr. Gray and Dr. Levy.  In a letter dated August 19, 2009, counsel for Plaintiffs represented that another expert, Mr. Brookshire, will also be utilized in the present cases in connection with Plaintiffs' medical monitoring claims.  Counsel states that Mr. Brookshire was also disclosed in the <u>Rhodes</u> matter.  Further, counsel represents that before Defendant disclosed its non-medical monitoring experts in the present cases, Defendant deposed Dr. Gray, Dr. Levy, and Mr. Brookshire on their expert opinions in the <u>Rhodes</u> matter.

In opposition to the motion for an extension of time, Defendant argues that Plaintiffs fail to satisfy the standards required under Federal Rules of Civil Procedure 16(b)(4), 6(b)(1)(A), or 6(b)(1)(B) to obtain an extension of the April 20, 2009 deadline for submission of their non-medical monitoring expert reports and disclosures. (Def. E.I. du Pont de Nemours and Company's Br. in Opp. to Pls.' Mot. to Extend the Time for Submission of their Common Law/Non-Medical Monitoring Expert Reports to Coincide with Submission of their Medical Monitoring Reports [Doc. No. 321 in 06-1810; Doc. No. 276 in 06-3080] (hereinafter, "Def. Br.") 15-16.) Defendant argues that Plaintiffs have had ample opportunity to obtain expert reports in this litigation, and that they "unilaterally decided" to withhold certain reports in violation of the March 6, 2009 Order as part of a "calculated strategy to delay the submission of expert reports[.]" (Id. at 17-18, 21.) Defendant also argues that the Court already rejected a prior request by Plaintiffs' counsel to serve expert reports for the medical monitoring and non-medical monitoring claims at the same time, and that Plaintiffs provide no basis for the Court to reconsider its prior decision. (Id. at 17.) Moreover, Defendant asserts that because Plaintiffs did not file the present motion until July 24, 2009, more than three months after the April 20, 2009 deadline, Plaintiffs must demonstrate

9

"excusable neglect" for their failure to timely comply with the Court's scheduling order. (Id. at 19.) Defendant further contends that the Meyers v. Pennypack factors do not support Plaintiffs' requested extension, particularly in light of the alleged "strategic advantage" gained by Plaintiffs in having already been served with eight defense expert reports and Plaintiffs' purported "intentional" decision not to comply with the March 6, 2009 discovery order. (Id. at 18, 23.)

The Federal Rules of Civil Procedure provide the Court with broad authority to manage the schedule of litigation. See generally FED. R. CIV. P. 16. Rule 16 provides that the Court shall enter a scheduling order that limits the time to file motions and complete discovery. FED. R. CIV. P. 16(b). The rule further provides that a scheduling order may be modified "only for good cause and with the judge's consent." Id. To establish good cause under Rule 16, the party seeking the extension must show that the deadlines set forth in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." FED. R. CIV. P. 16(b) Advisory Committee Notes to 1983 Amendments; see also Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990); McElyea v. Navistar Int'l Transp. Corp., 788 F. Supp. 1366, 1371 (E.D. Pa. 1991), aff'd without opinion, 950 F.2d 723 (3d Cir. 1991). Good cause may also be

satisfied if the movant shows that the inability to comply with a scheduling order is "'due to any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" Newton v. Dana Corp., Parish Div., Civ. No. 94-4958, 1995 U.S. Dist. LEXIS 8473, at *3 (E.D. Pa. June 21, 1995) (quoting Gestetner Corp. v. Case Equipment Co., 108 F.R.D. 138, 141 (D. Me. 1985)). "In the absence of proof of good cause, 'the scheduling order shall control.'" Id. at *2 (quoting 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1997)).

In the motion papers, the parties cite the standards set forth in FED. R. CIV. P. 6(b)(1) for obtaining extensions of time. Rule 6(b)(1) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time[.] . . ." FED. R. CIV. P. 6(b)(1). Thus, under either Rule 6 or Rule 16, a party must demonstrate "good cause" in seeking to obtain an extension of time. Moreover, when a motion for an extension of time is made "after the time has expired," the court must also find that "the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B).

In deciding the present motion for an extension of time, the Court further considers the factors set forth in applicable case law regarding exclusion of experts, because the denial of

11

Plaintiffs' request may have the practical effect of excluding at trial the testimony of certain experts in connection with Plaintiffs' non-medical monitoring claims.  See Spring Creek Holding Co. v. Keith, No. Civ. A. 02-376, 2006 WL 2403958, at *3 n.2 (D.N.J. Aug 18, 2006) (four-prong standard used when determining whether to allow admission of expert testimony after discovery period has ended); Potomac Elec. Power Co. v. Elec. Motor Supply, Inc., 190 F.R.D. 372, 376-77 (D. Md. 1999) ("Because the practical effect of this conclusion would be the exclusion of plaintiff's expert from the trial of this case, the court must also focus on the law applicable to the question of whether to exclude an expert witness who has not been disclosed in accordance with a scheduling order."); Seymour v. Consolidated Freightways, 187 F.R.D. 541, 542 (S.D. Miss. 1999) ("Exclusion of expert testimony based on a party's failure to properly and timely designate experts is governed by four factors[.] . . ."). The Third Circuit, in Meyers v. Pennypack Woods Home Ownership Ass'n, set forth four factors that must be considered before excluding evidence: (1) the prejudice or surprise to the party against whom the evidence would be presented; (2) the ability to cure the prejudice; (3) the extent to which the evidence, if admitted, would disrupt trial of the case; and (4) bad faith or willfulness in failing to comply with the Court's Order. Meyers v. Pennypack Woods Home Ownership Ass'n,

559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985), aff'd, 482 U.S. 656, 107 S. Ct. 2617, 96 L.Ed.2d 572 (1987); see also In re Mercedes-Benz Antitrust Litig., 225 F.R.D. 498, 506 (D.N.J. 2005). "'The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony.'" Mercedes-Benz, 225 F.R.D. at 504-05 (internal quotation omitted).

The Court finds that Plaintiffs have demonstrated good cause to extend the April 20, 2009 deadline for submission of their merits-related expert reports and disclosures for non-medical monitoring claims, such that Plaintiffs may rely on their medical monitoring expert reports in connection with their non-medical monitoring claims. Counsel for Plaintiffs represents that although the medical monitoring expert reports bear on the non-medical monitoring claims, they were not produced by the April 20, 2009 deadline for submission of expert reports and disclosures on the non-medical monitoring claims because they are primarily medical monitoring reports and only "tangentially" bear on some of the elements of the non-medical monitoring claims. (Transcript of

13

Hearing on Aug. 17, 2009, at 29:23-30:1.)[4]   Furthermore,
Plaintiffs' counsel represented at oral argument that Plaintiffs'
medical monitoring experts – Dr. Gray and Dr. Levy – were still
conducting their analyses of the plaintiffs at the time the non-
medical monitoring disclosures were made, and, consequently,
Plaintiffs were not in a position to disclose those reports on
April 20, 2009. (Id. at 29:13-22.)  Moreover, when the expert
report and disclosure deadlines for medical monitoring and non-
medical monitoring claims were set, there was no discussion on the
record as to whether the elements of proof for the medical
monitoring claims would, in part, overlap with the elements of
proof for the non-medical monitoring claims. (Id. at 30:25-31:21.)
Counsel therefore did not address at the time the March 6, 2009
Order was entered whether Plaintiffs would be required to obtain
their medical monitoring reports by the April 20, 2009 deadline
insofar as such reports would tangentially bear on the non-medical
monitoring claims. Plaintiffs' counsel states that Plaintiffs only
"came to the realization" that some portions of the medical
monitoring experts' reports may be necessary in connection with the
non-medical monitoring claims at the time Plaintiffs were preparing
their non-medical monitoring expert disclosures, which was after

---

4.  At the hearing on September 16, 2009, defense counsel did
not dispute that the reports produced by Plaintiffs on August 28,
2009 primarily relate to the medical monitoring claims.

the hearing at which the expert deadlines were set.  (Id. at 31:22-24.)  Plaintiffs raised the issue by motion on April 10, 2009, which the Court notes was prior to the April 20, 2009 deadline for submission of non-medical monitoring expert reports and disclosures.  Furthermore, Plaintiffs timely submitted the expert reports and disclosures that relate solely to their non-medical monitoring claims, timely produced their medical monitoring expert reports and disclosures, and are not seeking an extension of time to obtain new reports that relate only to the non-medical monitoring claims.  Under these circumstances, the Court cannot find that Plaintiffs' counsel has unreasonably delayed in attempting to obtain the expert reports in this case.  Therefore, the Court finds that Plaintiffs have demonstrated good cause to extend Plaintiffs' time to serve expert reports and disclosures on the non-medical monitoring claims.

In so finding, the Court rejects Defendant's assertion that Plaintiffs must show "excusable neglect" as set forth in FED. R. CIV. P. 6(b)(1)(B) to obtain the requested extension.  In the motion filed on April 10, 2009, Plaintiffs clearly requested that they be permitted to rely on their medical monitoring expert disclosures and reports in connection with their non-medical monitoring claims.  Although Plaintiffs framed such request as a motion for clarification, the substance of the request is the same as that

15

presently before the Court.  Specifically, in the proposed form of order filed on April 10, 2009, Plaintiffs sought to "rely, if they so choose, on their merits-related expert reports and disclosures that will be used predominantly for medical monitoring issues in further support of its other non-medical monitoring claims, even if those medical monitoring-related reports are not filed on April 20, 2009."  (Proposed Form of Order [Doc. No. 255-3 in 06-3080].)  Moreover, while the motion for clarification was filed only in the Scott case, the notice of motion, memorandum of law, and proposed form of order contain both the Rowe and Scott captions.  Additionally, the memorandum of law and proposed form of order refer to "Plaintiffs" and do not limit the requested relief to Plaintiff Scott.  It is thus apparent that the request was made on behalf of both Rowe and Scott Plaintiffs.  Therefore, the Court concludes that both Rowe Plaintiffs and Scott Plaintiff sought the relief at issue in the present motion prior to the April 20, 2009 deadline, and the excusable neglect standard of Rule 6(b)(1)(B) does not apply under the circumstances.

The Court's finding that an extension is warranted is further supported by analysis of the Meyers factors.  As to the first factor, the prejudice or surprise to the party against whom the evidence would be presented, Defendant asserts that it is prejudiced because Plaintiffs' experts have now seen the defense

16

expert reports on the non-medical monitoring claims and will have an opportunity to rebut the conclusions contained therein. In essence, Defendant suggests that because Plaintiffs' medical monitoring experts had the ability to review Defendant's expert reports,[5] Plaintiffs' experts were presumably able to tailor their reports on the medical monitoring claims. However, the Court finds that this asserted prejudice is specious. Although the Court granted an opportunity for Defendant to review Plaintiffs' expert reports served on August 28, 2009 prior to deciding the present motion, Defendant has not identified how the reports have been "tailored" to address issues identified in Defendant's expert reports on the non-medical monitoring claims. Moreover, in light of the expert discovery schedule Plaintiffs' experts on medical monitoring claims would have the benefit of reviewing and opining on the defense expert reports on non-medical monitoring claims regardless of whether Plaintiffs' reports are utilized solely for Plaintiffs' medical monitoring claims or for all claims. Furthermore, the discovery schedule provided Defendant with an opportunity to serve rebuttal reports to the medical monitoring reports. The Court thus finds no prejudice arising from an extension of time so that Plaintiffs may utilize their expert

---

5.   Defendant served eight reports in connection with Plaintiffs' non-medical monitoring claims.  (Def. Br. 11-13.)

17

reports and disclosures for medical monitoring claims in further support of their non-medical monitoring claims.[6]  With respect to the second factor, the Court finds that Defendant has adequate time to prepare for Plaintiffs' expert testimony.  Therefore, Defendant is not unduly prejudiced or unfairly surprised by permitting Plaintiffs to rely on the medical monitoring expert reports and disclosures in further support of their non-medical monitoring claims.  The third factor, the extent to which the evidence, if admitted, would disrupt trial of the case, also supports granting Plaintiffs' motion, as the extension sought by Plaintiffs does not require additional discovery and the Final Pretrial Order has not yet been entered.  As to the fourth factor, the Court does not find bad faith or willfulness by Plaintiffs' counsel in failing to comply with the March 6, 2009 Order.  While Plaintiffs did not obtain expert reports on certain elements of their non-medical monitoring claims prior to the April 20, 2009 deadline, Plaintiffs requested additional time by motion filed prior to the expiration of the deadline.  Accordingly, the Court cannot conclude that such failure is the result of bad faith or counsel's intentional

---

6.   As noted supra, Plaintiffs have not requested an extension of time to obtain new expert reports solely in connection with their non-medical monitoring claims.  Rather, Plaintiffs seek to designate the medical monitoring expert reports and disclosures served on August 28, 2009 as expert disclosures for the non-medical monitoring claims.

disregard of the Court's Order.[7]  The Court shall therefore grant Plaintiffs' motion [Doc. No. 317 in No. Civ. A. 06-1810; Doc. No. 272 in No. Civ. A. 06-3080] for an extension of the merits-related expert disclosure deadline for non-medical monitoring experts, for the limited purpose of allowing Plaintiffs to designate the medical monitoring expert reports and disclosures served on August 28, 2009 as expert disclosures for the non-medical monitoring claims.[8]

Also before the Court are the separate motions of _Rowe_ Plaintiffs and _Scott_ Plaintiff seeking leave to amend the second amended complaints filed in each action.  _Rowe_ Plaintiffs seek

---

7. Moreover, although Defendant was on notice before it served its eight expert reports that Plaintiffs sought additional time to serve their expert reports, Defendant did not request an extension of time to submit its expert reports.  Further, Plaintiffs represent that Defendant was served with the plaintiffs' expert reports on medical monitoring issues in the _Rhodes_ matter – which are purportedly similar to the medical monitoring expert reports and disclosures served in the present cases – before Defendant submitted its expert reports on non-medical monitoring issues in the cases before this Court. Therefore, at the time Defendant served its non-medical monitoring expert reports and disclosures in the present cases, Defendant was on notice of the types of medical monitoring expert reports and disclosures to be served by Plaintiffs, and Defendant has not demonstrated prejudice so as to warrant denial of Plaintiffs' motion.

8. The Court also notes that Defendant has requested an extension of time to file dispositive motions.  Pursuant to Fed. R. Civ. P. 16 (b)(4), the Court finds good cause to grant Defendant's informal motion, made during the August 17, 2009 telephone conference, to extend the time in which the parties may file dispositive motions. (Transcript of August 17, 2009 Conference at 10:16-14:7; 44:15-45:19.) The Court shall set a date for the filing of dispositive motions by separate Order.

19

leave to assert against Defendant claims of strict liability, public nuisance, a claim under the New Jersey Environmental Rights Act (hereinafter, "NJERA"), N.J.S.A. § 2A:35A-4, and a claim under the "imminent and substantial endangerment citizen suit provision" of the Resource Conservation and Recovery Act of 1976 (hereinafter, "RCRA"), as amended, 42 U.S.C.A. §§ 6901, et seq.. (Rowe Pls.' Mem. in Supp. of Mot. for Leave to Amend Second Am. Compl. [Doc. No. 318-2] 1.)  In support of the motion, Rowe Plaintiffs assert that the strict liability, public nuisance, and NJERA claims were asserted in the Scott matter, and Defendant therefore has been defending against these claims since the Scott complaint was filed in 2006.  (Id. at 3-4.)  With respect to the RCRA claim, Rowe Plaintiffs assert that Defendant has had notice of their intention to bring this claim since February 23, 2009.  (Id. at 4.)  Rowe Plaintiffs further contend that all of the proposed claims arise out of the same facts and circumstances that have been the subject of the litigation since its inception, and that the present motion is not "colored by undue delay, bad faith, dilatory motive, or futility." (Id. at 4-5.)  In their reply brief, Rowe Plaintiffs assert that Defendant cannot identify any new discovery it would need to conduct if the motion to amend is granted, and that Defendant has "ample opportunity" to pursue expert discovery concerning the RCRA claim should it seek any additional discovery.

20

(Rowe Pls.' Reply in Supp. of Mot. for Leave to Amend Second Am. Compl. [Doc. No. 330] 2, 5.) <u>Rowe</u> Plaintiffs also note that their RCRA claim is based on the United States Environmental Protection Agency's release of a provisional health advisory in January of 2009 and that they had to wait at least ninety days before seeking to add such a claim. (<u>Id.</u> at 7-8.)

    <u>Scott</u> Plaintiff seeks leave to assert against Defendant claims of battery, trespass, and gross negligence. (Pl. Scott's Mem. in Supp. of Mot. for Leave to Amend Second Am. Compl. [Doc. No. 273-2] 1.) Similar to the arguments of <u>Rowe</u> Plaintiffs, <u>Scott</u> Plaintiff asserts that the claims she seeks to assert arise out of the same set of facts that have been the subject of litigation for years, and that Defendant has defended against these claims in the <u>Rowe</u> matter. (<u>Id.</u> at 3-4.) <u>Scott</u> Plaintiff also similarly asserts that the motion is not "colored by undue delay, bad faith, dilatory motive, or futility[.]" (<u>Id.</u> at 5.) <u>Scott</u> Plaintiff further notes that <u>Rowe</u> counsel was substituted in the case as counsel for <u>Scott</u> Plaintiff on March 20, 2009, that a motion to consolidate cases and file a unified complaint was filed on March 30, 2009, that the motion was denied without prejudice on July 2, 2009, and that <u>Scott</u> Plaintiff "promptly" filed the present motion to amend. (Pl. Scott's Reply in Supp. of Mot. for Leave to Amend Second Am. Compl. [Doc. No. 285] 3-4.)

21

In opposition, Defendant asserts that both motions to amend should be denied on grounds of undue delay and undue prejudice, and that Rowe Plaintiffs' motion to add an NJERA claim should be denied on futility grounds. (Defendant E.I. du Pont de Nemours and Company's Br. in Opp. to Pls.' Motions to Amend their Complaints [Doc. No. 327 in No. Civ. A. 06-1810; Doc. No. 282 in No. Civ. A. 06-3080] 10.) As to undue delay, Defendant argues that because Plaintiffs in both actions "had access to the facts necessary to plead all potential legal causes of action since the litigation began," the three-year delay in seeking leave to assert new claims, after the close of fact discovery and while merits-expert reports are being prepared, and despite ample opportunity to amend earlier, constitutes undue delay. (Id. at 1, 10, 13.) Defendant argues that Plaintiffs' attempts to amend their complaints at this stage of the litigation is "part of an ongoing effort to delay the case." (Id. at 16.) With respect to undue prejudice, Defendant argues that it "tailored its defense and discovery in each of the cases to the claims being made," and permitting Plaintiffs to amend the complaints at this time would purportedly "reset discovery and essentially turn the case back more than two years." (Id. at 14.)[9]

---

9. At oral argument on September 16, 2009, counsel for Rowe Plaintiffs and Scott Plaintiff represented that should the Court grant leave to amend, Plaintiffs will not seek fact or expert discovery or class certification in connection with any of the proposed claims. (Transcript of Hearing on September 16, 2009 at

22

Defendant notes in particular that it would be required to serve additional interrogatories and document requests, would likely redepose Plaintiffs, and might conduct additional investigation and obtain supplemental expert reports and/or new expert reports. (Id. at 15.) Defendant also argues that Rowe Plaintiffs' NJERA claim is futile because Rowe Plaintiffs failed to comply with NJERA's mandatory notice provisions,[10] and because a private right of action is precluded as the New Jersey Department of Environmental Protection is "firmly engaged in regulatory oversight of the PFOA issues that are the subject of Plaintiffs' Complaints." (Id. at 17, 24.)

Before addressing the merits of the motions to amend, the Court must decide Plaintiffs' motion seeking to strike as untimely Defendant's brief in opposition to Plaintiffs' motions for leave to amend the second amended complaint. Defendant filed opposition to the motions on August 25, 2009. Plaintiffs contend that Defendant's opposition brief should have been filed by August 24, 2009, not August 25, 2009. Defendant asserts that because the

---

21:20-22:20; 37:11-19.)

10. Rowe Plaintiffs represent that they resent notices on August 27, 2009 "to avoid any dispute as to the validity of the notice," and request that the Court "allow 30 days to pass before Plaintiffs amend their Complaint to add the NJERA claim." (Rowe Pls.' Reply in Supp. of Mot. for Leave to Amend Second Am. Compl. [Doc. No. 330] 11-12.)

return date was September 8, 2009, its opposition was due fourteen days prior to the original motion day, which defense counsel calculated was August 25, 2009. Pursuant to Local Civil Rule 7.1, a motion filed with the Court "shall be made returnable . . . on the first regular motion day which is at least 24 days after the date of the filing." L. Cɪᴠ. R. 7.1(c)(1). Opposition papers "must be filed with the Clerk at least 14 days prior to the original motion day, unless the Court otherwise orders[.]" L. Cɪᴠ. R. 7.1(d)(2). In this case, Plaintiffs' motions to amend were made returnable on Tuesday, September 8, 2009, because the original return date, Monday, September 7, 2009, was a legal holiday. The table prepared by the Clerk of the Court pursuant to Local Civil Rule 78.1(a) provides that the deadline for filing opposition to motions returnable on September 8, 2009 was August 24, 2009. However, pursuant to Local Civil Rule 7.1(d)(2), fourteen days prior to the September 8, 2009 return date was August 25, 2009. This inconsistency is sufficient to support Defendant's request that the Court consider the opposition papers filed on August 25, 2009. Moreover, there does not appear to be any prejudice to Plaintiffs as a result of the August 25, 2009 filing, and there is no evidence to suggest that Defendant acted in bad faith.[11]   See,

---

11.  To the contrary, defense counsel represented on August 17, 2009 that the opposition brief would be filed on August 25, 2009. (See Transcript of Hearing on August 17, 2009, at 7:1-3.)

e.g., Nadolski v. Hunnicut, No. Civ. A. 2:07-164, 2009 WL 1659907, at *3 (N.D. Ind. June 15, 2009) (denying motion to strike reply brief filed one day late, finding no prejudice by one day delay and noting that court would be deprived of "the benefit of a fully briefed motion" if it did not consider reply brief in case that was "replete with factual disputes and legal issues" and further noting remedy sought was "extraordinary" given "the minor (if not insignificant) nature of the defendants' infraction."). Consequently, Plaintiffs' motion to strike the brief filed by Defendant in opposition to Plaintiffs' motions for leave to amend [Doc. No. 328 in No. Civ. A. 06-1810; Doc. No. 283 in No. Civ. A. 06-3080] is denied.

    Under FED. R. CIV. P. 15(a), leave to amend pleadings shall be "freely give[n]" when "justice so requires."  In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court articulated the policy of "freely" granting leave to amend as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or undeclared reasons -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman, 371 U.S. at 182; see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  A "trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is 'the touchstone for the denial of leave to amend.' . . . In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981) (citing Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)), cert. denied, 455 U.S. 1018 (1982); see also Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

In determining whether amendment of a complaint will cause undue prejudice, the Court must "focus on the hardship to the defendants if the amendment were permitted." Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868).  "Incidental prejudice is not a sufficient basis for the denial of a proposed amendment. Prejudice becomes undue when a party shows that it would be 'unfairly prejudiced' or deprived of the opportunity to present facts or evidence which it would have offered." Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 106 F. Supp. 2d 737, 745 (D.N.J.

26

2000)(citing <u>Heyl</u>, 663 F.2d at 426).

Here, Defendant argues that permitting the amendments will result in the reopening of discovery and will purportedly delay the litigation.  Counsel for Defendant acknowledged at oral argument that the common law claims and NJERA claim have been asserted in either the <u>Rowe</u> and/or <u>Scott</u> matters since 2006.  Counsel argued, however, that Defendant litigated the claims in <u>Rowe</u> and <u>Scott</u> differently, and particularly noted that Defendant would have conducted discovery differently had Plaintiffs' present counsel been counsel for <u>Scott</u> Plaintiff at the outset of the litigation.  Counsel also argued generally that had the proposed claims been asserted earlier, Defendant might have served additional interrogatories and document requests, and taken additional depositions or asked additional questions of the plaintiffs in each case.  However, the Court rejects as a basis for finding undue prejudice Defendant's failure to conduct discovery on certain claims because it did not take such claims "seriously." (Transcript of Hearing on September 16, 2009, at 27:14-19; 44:7-13.)  Moreover, Defendant fails to articulate with specificity what discovery would need to be conducted should the amendments be permitted.[12]  (<u>See</u>, <u>e.g.</u>, <u>id.</u> at 43:18-21; 45:5-18.)  Additionally,

---

12.  <u>Rowe</u> Plaintiffs' proposed RCRA claim was not previously asserted in either the <u>Rowe</u> or <u>Scott</u> matters.  However, at oral argument on September 16, 2009, defense counsel did not

Plaintiffs represent that they require no further fact or expert discovery in support of any of the claims to be asserted, and Defendant therefore will not be burdened by responding to new discovery. Insofar as Defendant argues that granting the motions to amend will delay the litigation, Defendant does not assert that a temporary delay, if any, will deprive Defendant of the opportunity to present facts or evidence.  The Court therefore concludes that Defendant fails to specify a particular prejudice that warrants denial of Plaintiffs' motions to amend.

In determining whether a proposed amendment should be denied on the basis of undue delay, the Court must "focus on the plaintiffs' motives for not amending their complaint to assert [the proposed] claim earlier[.]" Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984), cert. denied, 469 U.S. 1122, 105 S. Ct. 806, 83 L. Ed. 2d 799 (1985).  "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court[.]"  Id. (citations omitted); see also Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir.

---

articulate the specific discovery that would be required. (See Transcript of Hearing on September 16, 2009 at 42:12-45:18; 43:19-21.) Furthermore, even if Defendant required additional discovery on the RCRA claim, Defendant fails to demonstrate that conducting limited discovery on this claim constitutes "undue" prejudice sufficient to deny Rowe Plaintiffs' motion to amend.

2001) (". . . [D]elay alone is an insufficient ground to deny leave to amend.") (citing <u>Cornell & Co.</u>, 573 F.2d at 823).   Delay may become undue when a movant has had previous opportunities to amend the complaint, or when the movant does not seek leave to amend until after summary judgment has been granted to the adverse party. <u>Cureton</u>, 252 F.3d at 273.   In the present cases, Plaintiffs delayed in seeking leave to amend their complaints with respect to several of the claims that they now seek to assert.   <u>Rowe</u> Plaintiffs have known about the potential viability of the strict liability, public nuisance, and NJERA claims since such claims were filed in the <u>Scott</u> action in 2006, but they chose not to seek leave to assert these claims until 2009.   Similarly, Plaintiff Scott has known about the potential viability of the battery, trespass, and gross negligence claims since they were asserted in the <u>Rowe</u> complaint in 2006, but she chose not to seek leave to assert these claims at an earlier time.   At oral argument, Plaintiffs' counsel represented that <u>Rowe</u> Plaintiffs' proposed claims only became viable in the spring of 2009 when counsel learned the results of testing performed by Defendant concerning PFOA levels near Defendant's Chambers Works plant.   Counsel further noted at oral argument that Plaintiff Scott did not assert battery, trespass, and gross negligence claims earlier because, until recently, she was represented by different counsel who did not believe there was a

basis to assert such claims.[13]

   In support of its undue delay argument, Defendant relies upon
a decision in the Rhodes case, where the court denied plaintiffs'
motion to amend the class action complaint to assert a claim under
the same provision of RCRA, which Rowe Plaintiffs here seek to add.
(See October 16, 2009 Memorandum Opinion and Order in Rhodes v.
E.I. Du Pont De Nemours, Civ. No. 6:06-530, Southern District of
West Virginia, attached to Def.'s Oct. 16, 2009 letter [Doc. No.
345]).   In Rhodes, the court determined that permitting the
plaintiffs' amendment would result in undue delay and prejudice to
the defendant, noting that discovery was complete and that all
dispositive motions had been filed and served. (Id. at 3.)
However, the circumstances of the Rhodes case are distinguishable
from this case where dispositive motions have not been filed.

   The Court finds that the delay in seeking the requested relief
is not so undue as to warrant denial of the motion.  In particular,
the Court finds that permitting the amendments will not place "an
unwarranted burden on the court," Adams, 739 F.2d at 868, as
Plaintiffs do not seek any further discovery in this matter and
represent that they will not seek class certification on the

---

13. While the Court accepts Rowe Plaintiffs' explanation for
their failure to assert the proposed claims earlier, the Court
does not find Scott Plaintiff's explanation, i.e., that prior
counsel did not want to assert such claims, to be a sufficient
justification for the delay in asserting such claim.

proposed new claims.  Nor did Plaintiffs move to amend after dispositive motions were decided.  The Court thus finds that any delay by Plaintiffs in seeking leave to amend the complaints is not so undue as to warrant denial of the motions.

Finally, the Court notes Defendant's argument that Rowe Plaintiffs' NJERA claim is futile.  In determining whether a proposed amendment is futile, the Court shall conduct the same analysis as that utilized for a motion to dismiss under FED. R. CIV. P. 12(b)(6).  Fishbein Family P'ship v. PPG Indus., Inc., 871 F. Supp. 764, 769 (D.N.J. 1994).  A motion to dismiss may be granted under Rule 12(b)(6) if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561, 563, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007).  When examining the sufficiency of a litigant's pleading under Rule 12(b)(6), the court must view the allegations in the complaint as true and in the light most favorable to the party asserting them.  See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 765 (D.N.J. 2000).

In this case, the Court cannot determine based on the allegations in the complaint that Rowe Plaintiffs' NJERA claim is futile.  Defendant argues that Rowe Plaintiffs failed to provide proper notice of their NJERA claim in accordance with N.J.S.A. §

31

2A:35A-11, which states that "[n]o action may be commenced pursuant to this act unless the person seeking to commence such suit shall, at least 30 days prior to the commencement thereof, direct a written notice of such intention by certified mail, to the Attorney General, the Department of Environmental Protection, the governing body of the municipality in which the alleged conduct has, or is likely to occur, and to the intended defendant[.]"  N.J.S.A. § 2A:35A-11.  Rowe Plaintiffs assert in their proposed third amended complaint that "Plaintiffs sent an Environmental Rights Act Notice on February 23, 2009 and August 27, 2009 to du Pont, the New Jersey Attorney General, the New Jersey Department of Environmental Protection, the Untied [sic] States Environmental Protection Agency and local municipalities." (Decl. of Shari M. Blecher in Supp. of Pls.' Replies in Supp. of their Motions for Leave to Amend Second Am. Complaints [Doc. No. 330 in No. Civ. A. 06-1810], Ex. 13 (Third Amended Civil Action Complaint - Class Action) 32 ¶ 159.)  While Defendant disputes whether notice to the local municipalities was proper, in deciding the present motion the Court must accept as true Rowe Plaintiffs' assertion that valid notice was given.[14]

_____

14.  Furthermore, Rowe Plaintiffs represent that they resent notices on August 27, 2009 "to avoid any dispute as to the validity of the notice," and ask that their third amended complaint not be filed until thirty days expires.  (Rowe Pls.' Reply in Supp. of Mot. for Leave to Amend Second Am. Compl. [Doc. No. 330], at 11-12.)  Defendant did not dispute at oral argument that the notices sent on August 27, 2009 would comply with the

Furthermore, Defendant asserts that Rowe Plaintiffs cannot assert a private right of action because they "cannot demonstrate that the [New Jersey Department of Environmental Protection] has failed to act with regard to PFOA in and around the Chambers Works plant[.] . . . " (Defendant E.I. du Pont de Nemours and Company's Br. in Opp. to Pls.' Motions to Amend their Complaints [Doc. No. 327 in No. Civ. A. 06-1810; Doc. No. 282 in No. Civ. A. 06-3080], at 24-25.) However, an inquiry into whether the New Jersey Department of Environmental Protection has failed to take action with respect to PFOA would require the Court to look beyond the pleadings, which is not appropriate in deciding a motion to amend.   Therefore, the Court concludes that futility is not a basis to deny Rowe Plaintiffs' motion to amend the second amended complaint insofar as they seek to assert a claim under the NJERA.[15]

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 24th day of February 2010,

**ORDERED** that the motion [Doc. No. 317 in No. Civ. A. 06-1810; Doc. No. 272 in No. Civ. A. 06-3080] of Rowe Plaintiffs and Scott

---

NJERA mandatory notice provision if the third amended complaint is filed after the expiration of thirty days.

15.  Defendant does not assert futility as a basis for denial of Rowe Plaintiffs' motion to amend to assert claims for strict liability, public nuisance, or a claim under RCRA, nor does Defendant assert futility as a basis for denial of Scott Plaintiff's motion to amend to assert claims for battery, trespass, and gross negligence.

Plaintiff requesting an extension of the merits-related expert disclosure deadline for non-medical monitoring experts so that Plaintiffs may rely on their expert reports and disclosures for medical monitoring claims in further support of their non-medical monitoring claims shall be, and are hereby, **GRANTED**; and it is further;

ORDERED that the motions [Doc. No. 318 in No. Civ. A. 06-1810; Doc. No. 273 in No. Civ. A. 06-3080] of Rowe Plaintiffs and Scott Plaintiff seeking leave to amend the second amended complaint shall be, and are hereby, **GRANTED**; and it is further

ORDERED that the motion [Doc. No. 328 in No. Civ. A. 06-1810; Doc. No. 283 in No. Civ. A. 06-3080] of Rowe Plaintiffs and Scott Plaintiff seeking to strike Defendant's brief in opposition to Plaintiffs' motions to amend the complaints shall be, and is hereby, **DENIED**; and it is further

ORDERED that Plaintiffs shall file their third amended complaints in the form attached to the motions **within ten (10) days** from the date of entry of this Order, and shall serve the third amended complaints in accordance with the Federal Rules of Civil Procedure.


s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb